ACCEPTED
03-17-00770-CV
21333123
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/15/2017 4:35 PM
JEFFREY D. KYLE
CLERK

No. 03-17-00770-CV

_____

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/15/2017 4:35:09 PM
JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN

_____

Empower Texans, Inc., and Michael Quinn Sullivan,
*Appellants*

v.

Tom Ramsay, Paul Hobby, Hugh C. Akin, James T. Clancy,
Wilhelmina R. Delco, Warren T. Harrison, Robert K. Long, and
Charles G. Untermeyer, in their individual capacities,
*Appellees.*

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
CAUSE NO. D-1-GN-14-001252,
THE HONORABLE AMY CLARK MEACHUM PRESIDING

# Motion to Dismiss Interlocutory Appeal
# for Want of Jurisdiction

Eric J.R. Nichols
enichols@beckredden.com
State Bar No. 14994500
Amanda G. Taylor
State Bar No. 24045921
ataylor@beckredden.com
Amy K. Penn
State Bar No. 24056117
apenn@beckredden.com

BECK REDDEN, LLP
515 Congress Avenue, Suite 1900
Austin, TX 78701
(512) 708-1000

**ATTORNEYS FOR APPELLEES**

# IDENTITY OF PARTIES AND COUNSEL

| | |
|---|---|
| Appellants (Plaintiffs) | Empower Texans, Inc. and Michael Quinn Sullivan |
| Appellants' Counsel | Joseph M. Nixon<br>AKERMAN, LLP<br>1300 Post Oak Blvd., Suite 2500<br>Houston, TX 77056<br><br>James E. "Trey" Trainor, III<br>AKERMAN, LLP<br>700 Lavaca Street, Suite 1400<br>Austin, TX 78701 |
| Appellees (Defendants) | Tom Ramsay, Paul Hobby, Hugh C. Akin, James T. Clancy, Wilhelmina R. Delco, Warren T. Harrison, Robert K. Long, and Charles G. Untermeyer, in their individual capacities.<br><br>• The order from which this appeal is pursued grants a plea to the jurisdiction filed by only these eight individuals, in their individual capacities. Hence, they are the only Appellees. |
| Additional Defendants (Interested Parties; Not Appellees) | The Texas Ethics Commission.<br><br>• Appellants' Notice of Appeal misnames the Commission as the "State of Texas Ethics Commission." It should be corrected in this Court's records and future filings. *See* TEX. CONST., art. III, § 24a. |

| | |
|---|---|
| Additional Defendants (Interested Parties; Not Appellees) (cont.) | Seana Willing, in her capacity as Executive Director of the Texas Ethics Commission.<br><br>• When this suit was filed, Natalia Luna Ashley was the Executive Director of the Texas Ethics Commission. She has been automatically substituted in this proceeding by her successor, Seana Willing. Tex. R. App. P. 7.2(a).<br><br>• Appellants' Notice of Appeal misspells Ms. Willing's first name. It should be corrected in this Court's records and future filings.<br><br>Tom Ramsay, Hugh C. Akin, James T. Clancy, and Charles G. Untermeyer in their official capacities as current Commissioners of the Texas Ethics Commission; *and*<br><br>Steve P. Wolens, Chris Flood, Mary K. Kennedy, and Chad M. Craycraft, in their official capacities as current, successor Commissioners of the Texas Ethics Commission.<br><br>• The terms of former Commissioners Hobby, Delco, Harrison, and Long expired on November 19, 2015. In any proceeding against the Commissioners in their official capacities, their above-named successors should be automatically substituted. Tex. R. App. P. 7.2(a). |
| Appellees' Counsel | Eric J.R. Nichols<br>Amanda Taylor<br>Amy K. Penn<br>BECK REDDEN, LLP<br>515 Congress Ave., Suite 1900<br>Austin, Texas 78701 |

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ........................................................ i

TABLE OF CONTENTS ............................................................................ iii

INDEX OF AUTHORITIES ......................................................................... v

SUMMARY OF THE MOTION ...................................................................... 1

BACKGROUND ...................................................................................... 1

ARGUMENT & AUTHORITIES .................................................................... 5

    A.    Appellants Must Demonstrate a Specific, Proper
        Statutory Basis for Interlocutory Jurisdiction. ........................... 5

    B.    Section 51.014(a)(8) Provides Interlocutory
        Jurisdiction to Review Orders on Pleas by
        Governmental Units—Not State Actors in their
        Individual Capacities. ................................................................. 5

    C.    This Interlocutory Order Grants a Plea Filed by
        Individuals, Not a Governmental Unit. ..................................... 9

PRAYER ........................................................................................... 13

CERTIFICATE OF CONFERENCE ............................................................. 14

CERTIFICATE OF SERVICE .................................................................... 14

APPENDIX

1. Individual Defendants' Plea to the Jurisdiction, without exhibits, 6.13.2017 (CR.3941-3956).

2. Fourth Amended Petition, without exhibits, 7.26.2017 (CR.4247-4285).

3. Response to the Plea, without exhibits, 7.28.2017 (CR.4291-4295).

4. Letter Ruling, 9.15.2017 (CR.4298).

5. Order Granting Individual Defendants' Plea, 10.20.2017 (CR.4325-4326).

6. Notice of Appeal, without exhibits, 11.9.2017 (CR.4327-4328).

7. Docketing Statement, 11.28.2017

# INDEX OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Adams v. Harris County*,
No. 04-15-00287-CV, 2015 Tex. App.
LEXIS 12459 (Tex. App.—San Antonio
Dec. 9, 2015, pet. denied) ..............................................................8, 10, 12

*Am. Heritage Capital, LP v. Gonzalez*,
436 S.W.3d 865 (Tex. App.—Dallas
2014, no pet.). ..................................................................................... 5

*Cen-Tex Childcare, Inc. v. Johnson*,
339 S.W.3d 734 (Tex. App.—Fort Worth
2011, no pet.) ...................................................................................... 5

*City of Donna v. Ramirez*,
No. 13-16-00619-CV, 2017 Tex. App.
LEXIS 10476 (Tex. App.—Corpus Christi
Nov. 9, 2017, no pet.) .......................................................................... 8

*City of Houston v. Estate of Jones*,
388 S.W.3d 663 (Tex. 2012) ................................................................. 5

*Empower Texans, Inc.*
*v. Texas Ethics Comm'n*,
No. 03-16-00019-CV, 2016 Tex. App.
LEXIS 12446 (Tex. App.—Austin
Nov. 22, 2016, no pet.) ..................................................................... 2, 3

*Garcia v. Kubosh*,
377 S.W.3d 89 (Tex. App.—Houston
[1st Dist.] 2012, no pet.) ..................................................................... 6

*Great Sw. Reg'l Ctr., LLC v. ACSWD, LP*,
No. 03-17-00359-CV, 2017 Tex. App.
LEXIS 8156 (Tex. App.—Austin
Aug. 25, 2017, no pet.) .....................................................................6, 12

*LTTS Charter Sch., Inc. v. C2 Constr., Inc.,*
   342 S.W.3d 73 (Tex. 2011) .......................................................... 6

*Minton v. Gunn,*
   355 S.W.3d 634 (Tex. 2011) ...................................................... 5

*Sanders v. City of Grapevine,*
   218 S.W.3d 772 (Tex. App.—Fort Worth
   2007, pet. denied) .................................................................... 9

*Stary v. DeBord,*
   967 S.W.2d 352 (Tex. 1998) ..................................................... 5

*Tex. A&M Univ. Sys. v. Koseoglu,*
   233 S.W.3d 835 (Tex. 2007) ................................................. 7, 8

*Tex. Dep't of Pub. Safety v. Petta,*
   44 S.W.3d 575 (Tex. 2001) ....................................................... 9

**STATUTES**

42 U.S.C. § 1983 ............................................. 2, 3, 4, 9, 10, 11, 12

Tex. Civ. Prac. & Rem. Code
   § 51.014(a)(8).................................................1, 4, 5, 6, 8, 9, 12
   § 101.001(3) ............................................................................ 7

Tex. Gov't Code § 571.137(d) ....................................................... 9

TO THE HONORABLE THIRD COURT OF APPEALS

## SUMMARY OF THE MOTION

Appellants Empower Texans, Inc., and Michael Quinn Sullivan seek to appeal an interlocutory order, claiming that section 51.014(a)(8) of the Texas Civil Practice and Remedies Code provides a basis for appellate jurisdiction. They are mistaken. Section 51.014(a)(8) allows for an interlocutory appeal of an order granting or denying a plea to the jurisdiction brought by a governmental unit. The underlying order grants a plea brought by eight commissioners in their <u>individual capacities</u> (Appellees), not by a governmental unit nor by governmental officials in their official capacities. Moreover, the plea was based on standing, ripeness, and mootness—not an assertion of sovereign immunity. Hence, section 51.014(a)(8) does not provide a basis for appellate jurisdiction to review this interlocutory order.

## BACKGROUND

Empower Texans, Inc. and its President, Michael Quinn Sullivan, brought the underlying suit in 2014 seeking a protective order and moving to quash two subpoenas that the Texas Ethics Commission ("the Commission") issued as part of its investigation of complaints filed against Empower Texans. CR.6, 20. The complaints alleged that Empower Texans

violated certain campaign finance rules set forth in Chapter 305 of the Texas Government Code.  CR.11, 3943-3944.[1]

Empower Texans and Sullivan amended their petition in November 2015 to add the then-current Commissioners as defendants in their individual and official capacities.  CR.2243-2244.  As is relevant here, Count IV of the Second Amended Petition complained that the eight named Commissioners, *in their individual capacities*, were liable under 42 U.S.C.

---

[1]There are currently two other appeals pending before this Court in related matters.  In Cause No. **03-17-00392-CV**, Sullivan appeals from the denial of a TCPA motion that he filed against the Commission in a separate trial court proceeding (D-1-GN-17-001878), which Sullivan filed as a *de novo* appeal from the Commission's final administrative order finding him in violation of Section 305.003 of the Texas Government Code.  That matter was argued before Justices Puryear, Field, and Bourland on December 13, 2017.

In Cause No. **03-16-00872-CV**, Empower Texans and Sullivan appeal from the grant of a partial plea to the jurisdiction filed by the Commission, which dismissed some of Sullivan's and Empower Texans' claims in a separate lawsuit (D-1-GN-15-004455) on the basis of immunity, mootness, and standing.  That lawsuit, like this one, is also based on Empower Texans' and Sullivan's challenges to the Commission's subpoenas and its ability under Chapter 571 of the Texas Government Code to enforce the lobbying regulations in Chapter 305.  That matter is fully briefed and pending a submission notice.

Notably too, in Cause No. **03-16-00019-CV**, this Court dismissed a prior interlocutory appeal pursued by Empower Texans and Sullivan in this same lawsuit (D-1-GN-14-001252).  There, Empower Texans appealed from an order denying its application for a temporary injunction to prohibit the Commission from taking further action to investigate the complaints.  While the appeal was pending, the Commission dismissed its subpoenas.  This Court dismissed the appeal as moot.  *Empower Texans, Inc. v. Texas Ethics Comm'n*, No. 03-16-00019-CV, 2016 Tex. App. LEXIS 12446, *2 (Tex. App.—Austin Nov. 22, 2016, no pet.).

§ 1983 for their actions related to the investigation of Empower Texans and Sullivan.  CR.2266-2270.

In the fall of 2016, the Commission withdrew its subpoenas and formally dismissed the complaints against Empower Texans.  CR.3945; *see also Empower Texans*, 2016 Tex. App. LEXIS 12446, at *5.

The eight named Commissioners, in their individual capacities, then filed an "Individual Defendants' Plea to the Jurisdiction," arguing that the trial court lacked subject-matter jurisdiction over the section 1983 claims against them in Count IV because (1) Empower Texans and Sullivan lacked standing, having suffered no cognizable injury; (2) the claims were not ripe, because the subpoenas had never been enforced at the time of filing suit and none of Empower Texans' or Sullivan's anticipated injuries ever materialized; and, (3) alternatively, the claims were moot because the subpoenas had been fully and finally withdrawn.  CR.3941, 3949-3955 (Appx. 1).

The plea was filed in response to the Second Amended Petition.  Prior to the hearing, Empower Texans and Sullivan filed a Fourth Amended Petition that did not make substantive changes to the section 1983 claims asserted against the Commissioners individually.  However, these claims became "Count V" in the Fourth Amended Petition, which was the live

3

pleading for purposes of the hearing on August 15, 2017.  CR.4247-4285 (Appx. 2); RR.11-12.

The Honorable Amy Clark Meachum granted the plea.  The Court issued a letter ruling on September 15 (CR.4298, Appx. 4), followed by a formal order on October 20, 2017 (CR.4325-4326, Appx. 5).  The order states that the "Individual Defendants' Plea to the Jurisdiction is GRANTED, and all claims brought pursuant to 42 U.S.C. § 1983 contained within Count V of Plaintiffs' Fourth Amended Petition are DISMISSED in their entirety with prejudice as to refiling."  CR.4325-4326 (Appx. 5).  Because the order does not dispose of all claims and parties, it is interlocutory.

Empower Texans and Sullivan filed their notice of appeal "pursuant to section 51.014 (a)(8) of the Texas Civil Practice and Remedies Code" on November 9.  CR.4327-4331 (Appx. 6).  Their Docketing Statement likewise claims that section 51.018(a)(8) provides this Court with jurisdiction to review the interlocutory order.  Appx. 10, pg. 2, § V.

## ARGUMENT & AUTHORITIES

**A.    Appellants Must Demonstrate a Specific, Proper Statutory Basis for Interlocutory Jurisdiction.**

An interlocutory order is appealable "only if a statute explicitly provides appellate jurisdiction." *Stary v. DeBord*, 967 S.W.2d 352, 352-53 (Tex. 1998); *Cen-Tex Childcare, Inc. v. Johnson*, 339 S.W.3d 734 (Tex. App.—Fort Worth 2011, no pet.). Courts strictly construe statutes authorizing interlocutory appeals because they are a "narrow exception to the general rule that only final judgments are appealable." *City of Houston v. Estate of Jones*, 388 S.W.3d 663, 666 (Tex. 2012) (per curiam).

The appellate court must determine its jurisdiction to consider the interlocutory appeal before reaching the merits. *Minton v. Gunn*, 355 S.W.3d 634, 639 (Tex. 2011). "[I]f the record does not affirmatively demonstrate that appellate jurisdiction is proper, the appeal must be dismissed." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 869 (Tex. App.—Dallas 2014, no pet.).

**B.    Section 51.014(a)(8) Provides Interlocutory Jurisdiction to Review Orders on Pleas by Governmental Units—Not State Actors in their Individual Capacities.**

Section 51.014(a)(8) allows an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." Tex. Civ. Prac. & Rem. Code

5

§ 51.014(a)(8); *see also LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 76 (Tex. 2011) (jurisdictional decision turned on whether appellant fit within the definition of "governmental unit" in Section 101.001(3)(D); *Great Sw. Reg'l Ctr., LLC v. ACSWD, LP*, No. 03-17-00359-CV, 2017 Tex. App. LEXIS 8156, *2 (Tex. App.—Austin Aug. 25, 2017, no pet.) (dismissing interlocutory appeal on appellee's motion prior to merits briefing because appellants, who relied on section 51.014(a)(8) for jurisdiction, were not "governmental units").

"[T]he statute's limitation of interlocutory jurisdiction to certain pleas to the jurisdiction—those brought by a governmental unit—indicates that the Legislature did not intend section 51.014(a)(8) as a blanket authorization for interlocutory appellate review of a trial courts' subject-matter jurisdiction." *Garcia v. Kubosh*, 377 S.W.3d 89, 105 & 107 n.41 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (Brown, J., concurring). "[W]hen a party appeals from an interlocutory ruling on a plea to the jurisdiction filed by an entity that is not a 'governmental unit,' as defined in section 51.014(a)(8), courts of appeals generally dismiss the appeal for lack of appellate jurisdiction without deciding challenges to the trial court's subject-matter jurisdiction." *Id.* (collecting cases).

Section 101.001(3) defines "governmental unit" as:

> (A)   this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts;
>
> (B)  a political subdivision of this state, including any city, county, school district, junior college district, levee improvement district, drainage district, irrigation district, water improvement district, water control and improvement district, water control and preservation district, freshwater supply district, navigation district, conservation and reclamation district, soil conservation district, communication district, public health district, and river authority;
>
> (C) an emergency service organization; and
>
> (D) any other institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution.

Tex. Civ. Prac. & Rem. Code § 101.001(3).

Each category of this definition facially refers to a type of *entity*, not an individual.   Nevertheless, the Texas Supreme Court has held that the definition includes state officials who are sued *in their official capacities* when they file a plea "*invoking the sovereign immunity* from suit held by the government itself." *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 837, 843-46 (Tex. 2007).  The *Koseoglu* Court explained:  "A suit against a state

7

official in his official capacity 'is not a suit against the official personally, for the real party in interest is the entity.' Such a suit actually seeks to impose liability against the governmental unit rather than on the individual specifically named and 'is, in all respects other than name, … a suit against the entity." *Id.* (internal citations omitted). Because the defendant in *Koseoglu* "filed a plea to the jurisdiction in defense of claims against him in his official capacity," the appellate court had jurisdiction under section 51.014(a)(8). *Id.* at 846. The Court made clear, however, that no claims against the defendant in his individual capacity were at issue in the interlocutory appeal. *Id.* at 846, n.3.

Without question, interlocutory orders on pleas to the jurisdiction filed by state actors seeking dismissal of claims against them *in their individual capacities* remain outside the scope of section 51.014(a)(8). *See, e.g., City of Donna v. Ramirez*, No. 13-16-00619-CV, 2017 Tex. App. LEXIS 10476, *19 (Tex. App.—Corpus Christi Nov. 9, 2017, no pet.) (holding "appellants' interlocutory appeal [of order denying plea based on declaratory judgment claims asserted against state actors in their individual capacities] is not authorized by section 51.014(a)(8)"); *Adams v. Harris County*, No. 04-15-00287-CV, 2015 Tex. App. LEXIS 12459, *9 (Tex. App.—San Antonio Dec. 9, 2015, pet. denied) (holding order granting plea and dismissing 42 U.S.C.

8

§ 1983 claims brought against state actor in his individual capacity was not subject to interlocutory appeal under section 51.014(a)(8)); *Sanders v. City of Grapevine*, 218 S.W.3d 772, 776 (Tex. App.—Fort Worth 2007, pet. denied) (holding trial court's order granting plea to jurisdiction and dismissing with prejudice claims against city officials in their individual capacities was not an appealable interlocutory order under section 51.014(a)(8)).

### C. This Interlocutory Order Grants a Plea Filed by Individuals, Not a Governmental Unit.

There can be no doubt on this record that the order appealed from is outside the scope of section 51.014(a)(8) because it was granted on behalf of eight individual defendants in their individual capacities. This is apparent from a review of the pleadings, the plea and the response to the plea, the hearing transcript, and the order.

***Live Pleading***: Empower Texans' and Sullivan's Fourth Amended Petition asserted only two grounds for the trial court's subject-matter jurisdiction: (1) Texas Government Code § 571.137(d); and (2) 42 U.S.C § 1983. CR.4249 (Appx. 2). The first supports a motion to quash an administrative subpoena, which is not at issue here. The second supports a claim of constitutional deprivation brought against defendants in their individual (not official) capacities. *See Tex. Dep't of Pub. Safety v. Petta*, 44

9

S.W.3d 575, 581 (Tex. 2001); *Adams*, 2015 Tex. App. LEXIS 12459, at \*9 ("A section 1983 claim against a governmental official or employee in his individual capacity for actions taken under the authority of his office seeks to impose personal monetary liability on the officer or employee. It is not a claim against a governmental unit, and a person sued only in his individual capacity may not assert the governmental unit's sovereign immunity.").

Count V of the petition asserts that the individual Commissioners violated Empower Texans' and Sullivan's constitutional rights by engaging in certain conduct related to their investigation of the complaints and issuance of the subpoenas. CR.3945-3948 (Appx. 1); CR.4276-4282 (Appx. 2). Empower Texans and Sullivan claimed they were damaged by such conduct because they were "forced to expend time and resources in their defense, as well as attorney's fees." CR.4279 (Appx. 2). "Accordingly, [they] sought] relief and damages as is authorized pursuant to 42 U.S.C. [§] 1983 and attorney's fees, costs, and expenses pursuant to 42 U.S.C. [§] 1988." CR.4279, 4282 (Appx. 2).

***Plea, Response, and Hearing***: The plea was expressly filed by the "Individual Defendants" in their individual capacities, seeking dismissal of the section 1983 claims set forth in Count V. CR.3941, 3945 (Appx. 1). Their plea was in no way based on an assertion of immunity. Instead, the

10

Individual Defendants urged that the trial court lacked jurisdiction because (1) Empower Texans and Sullivan lacked standing to assert the claims, having suffered no legally cognizable injury; (2) the claims were not ripe; or alternatively, (3) the claims were moot following the Commission's full and final dismissal of the complaints and termination of its investigation into Empower Texans' activities. CR.3949-3955 (Appx. 1).

In response, Empower Texans and Sullivan agreed that the claims subject to the plea were brought "under 42 U.S.C. 1983 against the Defendants in their individual capacities." CR.4292 (Appx. 3). The response makes clear that the plea did not involve any claims against the defendants in their official capacities, any claims against the Commission as a governmental unit, nor any assertion of immunity. CR.4291-4295 (Appx. 3).

This was confirmed by the argument presented at the hearing. Counsel for the Individual Defendants made clear that the plea was brought only by the eight named defendants in their individual capacities, and that it was "focused solely on claims brought pursuant to 42 U.S.C. 1983." RR.5:20-24, 10:17-23, 22:9-12. Counsel for Empower Texans and Sullivan unequivocally acknowledged that the plea was aimed at the section 1983 claims against the defendants in their individual capacities, and that "there's a difference"

11

between this type of claim and one brought against a state official in his official capacity.  RR.41:7-19.

***Order Granting Plea:***  Consistent with the pleadings and argument presented, the district court "ORDERED that the Individual Defendants' Plea to the Jurisdiction is GRANTED, and all claims brought pursuant to 42 U.S.C. § 1983 contained within Count V of the Plaintiffs' Fourth Amended Petition are DISMISSED in their entirety with prejudice as to refiling." CR.4325-4326 (<u>Appx. 5</u>).

This order does not grant or deny "a plea to the jurisdiction by a governmental unit" within the scope of section 51.014(a)(8).  All claims that were the subject of the plea and resulting order were brought against the Individual Defendants in their individual capacities.  The plea and order do not cover any claims against the Commissioners in their official capacities, and the Individual Defendant did not rely on sovereign immunity as the basis for their plea.  Hence, section 51.014(a)(8) does not provide a basis for jurisdiction over this interlocutory appeal.  The appeal must be dismissed for a want of jurisdiction.  Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); *see also Great Sw. Reg'l*, 2017 Tex. App. LEXIS 8156, at \*2; *Adams*, 2015 Tex. App. LEXIS 12459, at \*9.

# PRAYER

For these reasons, Appellees (Tom Ramsay, Paul Hobby, Hugh Akin, James Clancy, Wilhelmina Delco, Warren Harrison, Robert Long, and Charles Untermeyer, in their individual capacities) respectfully pray that this Court grant their Motion to Dismiss the Appeal for a Want of Jurisdiction, and tax all costs against Appellants, Empower Texans, Inc., and Michael Quinn Sullivan. The Appellees further request any and all further relief to which they may be entitled in law or equity.

Respectfully submitted,

BECK REDDEN, LLP
515 Congress Avenue, Suite 1900
Austin, TX 78701
(512) 708-1000

By: */s/Amanda Taylor*
        Eric J.R. Nichols
        enichols@beckredden.com
        State Bar No. 14994500
        Amanda G. Taylor
        State Bar No. 24045921
        ataylor@beckredden.com
        Amy K. Penn
        State Bar No. 24056117
        apenn@beckredden.com

**ATTORNEYS FOR APPELLEES**

13

## CERTIFICATE OF CONFERENCE

As required by Texas Rule of Appellate Procedure 10.1(a)(5), I certify that counsel for Appellees has conferred with counsel for Appellants about the merits of Appellees' Motion. Mr. Joe Nixon, counsel for Appellants, is opposed to the relief requested herein.

*/s/ Amanda G. Taylor*
Amanda G. Taylor

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss and Award Just Damages has been electronically filed and served on all counsel below on December 15, 2017. *See* Tex. R. App. P. 9.2(c)(1), 9.5(b)(1).

| | |
|---|---|
| Joseph M. Nixon | James E. "Trey" Trainor, III |
| joseph.nixon@akerman.com | Trey.trainor@akerman.com |
| AKERMAN, LLP | AKERMAN, LLP |
| 1300 Post Oak Blvd., Suite 2500 | 700 Lavaca Street, Suite 1400 |
| Houston, TX 77056 | Austin, TX 78701 |
| (713) 623-0887 | (512) 623-6700 |
| (713) 960-1527 Facsimile | (512) 623-6701 Facsimile |

*Attorneys for Appellants*

*/s/ Amanda G. Taylor*
Amanda G. Taylor

14

6/13/2017 3:50:17 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-14-001252
Raeana Vasquez

CAUSE NO. D-1-GN-14-001252

| | | |
|---|---|---|
| EMPOWER TEXANS, INC. and<br>MICHAEL QUINN SULLIVAN | § § § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § | |
| v. | § § § | |
| STATE OF TEXAS ETHICS COMMISSION,<br>NATALIA LUNA ASHLEY, in her capacity as<br>Executive Director of the Texas Ethics<br>Commission, TOM RAMSAY, individually<br>and in his capacity as Commissioner, PAUL<br>HOBBY individually and in his capacity as<br>Commissioner, HUGH C. AKIN, individually<br>and in his capacity as Commissioner, JAMES<br>T. CLANCY, individually and in his capacity<br>as Commissioner, WILHELMINA R. DELCO,<br>individually and in her capacity as<br>Commissioner, WARREN T. HARRISON,<br>individually and in his capacity as<br>Commissioner, ROBERT K. LONG, individually<br>and in his capacity as Commissioner, and<br>CHARLES G. UNTERMEYER, individually<br>and in his capacity as Commissioner, | § § § § § § § § § § § § § § § § § § § § | OF TRAVIS COUNTY, TEXAS |
| *Defendants.* | § § | 53rd JUDICIAL DISTRICT |

## INDIVIDUAL DEFENDANTS' PLEA TO THE JURISDICTION

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants Tom Ramsay, Paul Hobby, Hugh Akin, James T. Clancy, Wilhelmina R. Delco, Warren T. Harrison, Robert K. Long, and Charles G. Untermeyer, in their individual capacities (collectively, the "Commissioners"), by and through their undersigned counsel, file this plea to the jurisdiction. By and through this plea, the Commissioners respectfully request that the Court dismiss Count IV of Plaintiffs Empower Texans, Inc.'s and Michael Quinn Sullivan's Second Amended Petition (the "Petition"), because the Court lacks jurisdiction to hear the claims asserted therein. In support thereof, the Commissioners respectfully show the Court as follows:

# I.
## INTRODUCTION

This case arises from the investigation by the Texas Ethics Commission (the "Commission") of sworn complaints filed with the Commission. The sworn complaints at issue in this case alleged that Empower Texans, Inc. ("Empower Texans") had violated certain provisions of the Texas Election Code requiring disclosed appointment of a treasurer and disclosures regarding political contributions and expenditures by a "general-purpose" committee. The Commission's investigation of the sworn complaints involved requesting documents and information from Empower Texans and its President and CEO and a preliminary hearing.

Empower Texans and its President and CEO, Michael Quinn Sullivan ("Sullivan"), resisted the Commission's requests and investigation of the sworn complaints, including by refusing to provide complete responses to information requests or meaningfully participate in any hearing and filing numerous meritless lawsuits, including the present action.

In 2016, the Commission found following its investigation that it did not have sufficient evidence to determine that Empower Texans had violated any election law as alleged in the sworn complaints; consequently, the Commission withdrew all outstanding requests for documents and information and terminated its investigation in its entirety. As a result of the dismissal, the Commission did not issue any findings against Empower Texans or Sullivan with respect to the sworn complaints at issue in this lawsuit, nor did it assess any penalty, fine, or assessment against either Empower Texans or Sullivan with respect to those sworn complaints. Neither Empower Texans nor Sullivan was ever compelled to respond to any Commission request or to take any other action related to the sworn complaints.

Nevertheless, Plaintiffs persist in pursuing eleven separate claims against the Commissioners as individuals, alleging that each should be held personally liable for violating Plaintiffs' constitutional rights because the Commission subjected Plaintiffs to the administrative process of investigating sworn

2

3942

complaints. Simply stated, Plaintiffs have not shown and cannot show that the Commissioners violated any of Plaintiffs' constitutional rights, and this Court lacks jurisdiction to hear their claims. Plaintiffs have not and cannot show that they have not been deprived of any right, freedom, or property interest, nor have they been compelled to take any action they were not otherwise obligated to take. Though Plaintiffs' claims against the Commissioners fail for numerous reasons, as shown below, this plea to the jurisdiction focuses on their most glaring and simple flaw—neither Plaintiff can show that it has actually suffered any constitutional injury from the Commissioners' involvement in the Commissions' carrying out of its own constitutional and statutory duties. Plaintiffs therefore cannot show that the Court has jurisdiction to hear any of their claims against the Commissioners.

## II.
## EXHIBITS

True and correct copies of the following documents are attached hereto as exhibits and relied on as evidence in support of the Commission's Plea:

| | |
|---|---|
| **Exhibit A** | Plaintiff's Second Amended Petition (11/05/15) |
| **Exhibit B** | Defendants' Response in Opposition to Plaintiffs' Motion for Protective Order, Motion to Quash, and Application for Temporary Injunction (8/14/15) |
| **Exhibit C** | Order by Hon. Sam Sparks Granting Commission's Motion to Dismiss Federal Claim (04/25/14) |
| **Exhibit D** | Order by the Commission dismissing Empower Complaints (10/13/16) |

## III.
## PROCEDURAL BACKGROUND AND RELEVANT FACTS

### A.    Procedural Background

On April 20, 2012, the Commission received sworn complaints SC-3120485 and SC-3120486 (the "Empower Texans Complaints")[1], which raised concerns that Empower Texans had potentially

---

[1]*See* Second Am. Pet., Exs. 7 and 8 (**Exhibit A**).

3

violated numerous provisions in the Texas Election Code.[2] *See* TEX. ELEC. CODE Chs. 251-258 (regulating, *inter alia*, the collection, use, and reporting of political contributions and expenditures, and campaign activities). The Commission determined that the Empower Texans Complaints met statutory requirements for consideration and so began the review process set forth in Title 15.[3]

After a prolonged and unsuccessful effort to obtain information from Empower Texans and Sullivan, the Commission issued subpoenas seeking documents and information related to the Empower Texans Complaints (the "Subpoenas").[4] Empower Texans and Sullivan employed various measures to avoid compliance with the Subpoenas, including an unsuccessful motion for protection in federal district court and this action seeking similar relief.[5] The Commission continued to attempt to negotiate with Empower Texans and Sullivan, revising and narrowing the scope of the Subpoenas; however, both Plaintiffs indicated that they would not fully comply under any circumstances. On October 5, 2015, after further negotiations with plaintiffs proved futile, the Commission was forced to seek an order enforcing the Subpoenas pursuant to TEX. GOVT CODE §§ 571.137(c) and 2001.201(a).[6]

---

[2]A more detailed description of the relevant facts is set forth in Defendants' Response in Opposition to Plaintiffs' Motion for Protective Order, Motion to Quash, and Application for Temporary Injunction, filed on August 14, 2015 (**Exhibit B**).

[3]At the same time, the Commission also received sworn complaints SC-3120487 and SC-3120488 (the "Sullivan Complaints"), alleging that Sullivan's activities had violated other provisions of Title 15. The Sullivan Complaints—and the Commission's investigation of those Complaints—are the subject of a separate action instigated by Sullivan pursuant to TEX. GOV'T CODE § 571.133 (providing for de novo review of final Commission determinations). As Plaintiffs acknowledge in their Petition, "the cases against Sullivan, individually, asserting he was required to register as a lobbyist, are not before the TEC or this court." Second Am. Pet. ¶ 68.

[4]As described in the Petition, the Subpoenas were revised multiple times by the Commission in an effort to obtain compliance from Plaintiffs. Versions of the Subpoenas are attached to the Petition as Exhibits 16, 24, 25, 29.

[5]In its Order dismissing the federal court action, the federal district court noted that the Commission's investigation is "precisely the mission of the TEC," going on to note that "Plaintiffs' complaint that the TEC has 'already found them guilty' is both hyperbolic and reflective of the TEC's express compliance with the statutes governing its operation." (Case No. 1:14-CV-172-SS, Doc. 35 at 10) (**Exhibit C**).

[6]The Commission's claim was brought in Travis County District Court as Cause No. D-1-GN-15-

4

3944

On September 6, 2016, the Commission determined that a judicial admission by Plaintiffs had rendered moot the need to enforce the Subpoenas, and therefore formally withdrew the Subpoenas and dismissed with prejudice its request for enforcement of the Subpoenas. Then, at its meeting on October 13, 2016, the Commission voted to dismiss the Empower Texans Complaints "on the basis that there is insufficient credible evidence to prove the alleged violations occurred by a preponderance of the evidence."[7] The Commission's order of dismissal had the effect of fully and finally terminating all investigatory activity related to the Empower Texans Complaints. As a result, Plaintiffs were never compelled to respond to any Subpoena, nor was any penalty or assessment issued against them, with respect to the Empower Texans Complaints.

## B.      Count IV Against the Commissioners

Although the Commission is no longer investigating the Empower Texans Complaints or seeking enforcement of the Subpoenas against Empower Texans or Sullivan, Plaintiffs' claims in this action have not yet been formally dismissed. Through this motion, the Commissioners specifically address Count IV of the Petition, which asserts constitutional claims against them in their individual capacities pursuant to 42 U.S.C. § 1983.

The Commissioners identify eleven (11) separate claims they understand Plaintiffs to be asserting in Count IV.[8]

*Claim 1: Failure to Enact Procedural Rules as Due Process Violation*[9]

---

004455. Plaintiffs asserted counterclaims, some of which remain pending in that action.

[7]**Exhibit D**.

[8]Count IV does not clearly identify the claims asserted. The Commissioners have attempted to read Count IV as broadly as possible so as to identify every possible claim that Plaintiffs intend to assert against them.

[9]For ease of reference, the Commissioners refer to each specific claim as defined in this section (i.e., "Claim 1").

5

Section 571.131(c) of the Texas Government Code provides that "[t]he commission shall adopt rules governing discovery, hearings, and related procedures consistent with this chapter and chapter 2001." In Claim 1, Plaintiffs allege that the Commission has not enacted the rules referenced in Section 571.131(c) and that "conduct[ing] a hearing in a meaningful manner, according to the Texas Legislature, requires the establishment of procedural rules."[10] Plaintiffs conclude that "[a]ccordingly, any hearing in front of the Commissioners without the adoption of procedural rules violates Plaintiffs' Due Process rights."[11]

*Claims 2, 3, and 4: "Prosecution" Without Identifying Authoritative Statute as Violations of First[12], Fourth[13], and Fourteenth[14] Amendments*

Claims 2, 3, and 4 assert that "[t]he Commissioners have failed to identify a specific statute they have authority to administer that EMPOWER may have violated," and the "effect[s] of the Commissioners' prosecution" of Plaintiffs, thus, "are violations of the Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments."[15]

*Claims 5, 6, and 7: Attempt to Enforce Unconstitutional Interpretations of Statute as Violations of First[16], Fourth[17], and Fourteenth[18] Amendments*

---

[10]Second Am. Pet. ¶ 104.

[11]Second Am. Pet. ¶ 105.
[12]Defined here as "Claim 2."

[13]Defined here as "Claim 3."

[14]Defined here as "Claim 4." Where Plaintiffs raise claims asserting violations of the First, Fourth, and Fourteenth Amendments, they do not specify whether the Fourteenth Amendment is intended to identify the means through which the First and Fourth Amendments are applicable to the Commissioners, nor whether they intend to allege a separate violation under the Fourteenth Amendment. In an abundance of caution, the Commissioners address all "Fourteenth Amendment" claims as asserting separate due process violations.

[15]Second Am. Pet. ¶¶ 106, 107.

[16]Defined here as "Claim 5."

[17]Defined here as "Claim 6."

[18]Defined here as "Claim 7."

6

Claims 5, 6, and 7 allege that "[t]he Commissioners are attempting. . . to enforce two new unconstitutional interpretations of its statutes and regulations. . . so as to trigger the requirement that such a corporation register itself as a 'general-purpose committee,'" which "is a violation of the Plaintiffs' rights under the First, Fourth and Fourteenth Amendments."[19]

### Claims 8, 9, and 10: Seeking Enforcement of Subpoenas as Violations of First[20], Fourth[21], and Fourteenth[22] Amendments

Claims 8, 9, and 10 ask this Court to impose personal liability on the Commissioners for the Commission's efforts to enforce the Subpoenas "which, if complied with, would provide the Commissioners and political opponents of Plaintiffs with information that is now constitutionally protected."[23]

### Claim 11: Failure to Promptly Conduct Formal Hearing as Due Process Violation

Claim 11 asserts that pursuant to TEXAS GOVERNMENT CODE § 571.126(d), "the TEC and its Commissioners are required . . . to promptly conduct a formal hearing on each complaint," about which the Commission made a determination of insufficient credible evidence on November 5, 2013. Plaintiffs complain that as of November 5, 2015, the Commission had not issued a final decision on

---

[19]Second Am. Pet. ¶ 108. Paragraph 113 makes the same allegation that the Commissioners' interpretation of state law would have the effect of forcing Empower Texans to register as a "general purpose political committee," and therefore violates Plaintiffs' First, Fourth, and Fourteenth Amendment Rights. Because these two allegations are identical, the Commissioners interpret Paragraph 113 as reiterating the claims asserted in Paragraph 108.

[20]Defined here as "Claim 8."

[21]Defined here as "Claim 9."

[22]Defined here as "Claim 10."

[23]Second Am. Pet. ¶¶ 109-110, and 114.

7

the Empower Texans Complaints.[24] According to Plaintiffs, "the Commissioners are using the formal hearing process as the means to harm Plaintiff's due process and civil rights."[25]

## IV.
### STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's subject matter jurisdiction to hear the case before it. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject matter jurisdiction is an essential element of the court's authority to hear a case; consequently, because jurisdiction is never presumed, the plaintiff bears the burden of alleging facts affirmatively demonstrating the court's jurisdiction before the case may proceed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44, 446 (Tex. 1993). The existence of subject matter jurisdiction is a question of law to be determined by the Court. *State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).

A plea to the jurisdiction can challenge the pleadings on their face or the lack of sufficient jurisdictional facts in the pleading. *Texas Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). In conducting a review of jurisdictional facts, the court must take as true all evidence favorable to the non-movant and must indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* at 228. Where the facts alleged, taken as true, do not affirmatively establish the trial court's jurisdiction, dismissal is appropriate. *Id.*

When assessing a plea to the jurisdiction, the court begins with analyzing the live pleadings but may also consider evidence submitted to negate the existence of jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). "We must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction. And we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction." *Id.*

---

[24]Second Am. Pet. ¶ 115.

[25]*Id.*

8

Importantly, subject matter jurisdiction cannot be presumed and cannot be waived. *Continental Coffee Prods. v. Cazarez*, 937 S.W.2d 444, 449 n.2 (Tex. 1996).

## V.
### ARGUMENTS AND AUTHORITIES

All of Plaintiffs' claims in Count IV assert violations of the First, Fourth, or Fourteenth Amendments. For the following reasons, Plaintiffs have not established—and cannot establish—the Court's jurisdiction to hear these claims; therefore, they should be dismissed.

**A.      Plaintiffs Lack Standing to Assert the Claims in Count IV.**

At its core, Count IV asks this Court to impose personal liability on the Commissioners for the Commission's decision to investigate the Empower Texans Complaints. Plaintiffs lack standing to bring these claims because they have not suffered any legally cognizable injury as a result of any Commissioner's action.

"Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman*, 369 S.W.3d at 150 (*citing Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 915 (Tex. 2010)). "Under Texas law. . . the standing inquiry begins with the plaintiff's alleged injury," and "the injury itself [] must be concrete and particularized, actual or imminent, not hypothetical." *Heckman*, 369 S.W.3d at 155 (internal citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish their standing to assert claims under each of the constitutional provisions cited in the Petition, Plaintiffs must have suffered specific types of injury that simply are not at issue here.

*Due Process*

Plaintiffs style Count IV as "Due Process and/or Civil Rights Violation," and the foundation of each claim within it asserts that the Commissioners violated Plaintiffs' Fourteenth Amendment rights to due process. It is well-settled in both federal and Texas state courts that "due process is implicated when the state or its agents deprive a person of a protected liberty or property interest."

3949

*McCartney v. May*, 50 S.W.3d 599, 607 (Tex. App.—Amarillo 2001, no pet.) (*citing Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)). "[T]o demonstrate a particular injury to support standing, a party must plead a cognizable interest that is protected by the Due Process clause." *Neeley v. Tex. State Teachers Ass'n*, No. 13-06-549-CV, 2007 Tex. App. LEXIS 6619, at *27 (Tex. App.—Corpus Christi Aug. 16, 2007, no pet.) (plaintiff lacked standing to bring due process claim because no constitutional interest at stake to establish injury) (*citing Concerned Cmty. Involved Dev., Inc. v. City of Houston*, 209 S.W.3d 666, 672-73 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)).

Where, as here, a plaintiff brings a claim against an individual state actor, the "claimant must first identify a protected life, liberty, or property interest; and second, demonstrate that government action caused the deprivation of that interest." *Three Legged Monkey, L.P. v. City of El Paso*, No. EP-14-CV-00260-FM, 2015 U.S. Dist. LEXIS 185418, at *14 (W.D. Tex. 2015) (*citing San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991); *Baker v. McCollan,* 443 U.S. 137, 140 (1979)).

In this case, Plaintiffs have not identified—nor can they identify—any liberty or property interest at stake, much less described how they have been deprived of any such interest by the Commissioners' actions. The Commission's decision to dismiss the Empower Texans Complaints effectively terminated its investigation and did not find that Empower had violated any part of Title 15. Consequently, the Commission has imposed no penalties, fines, or sanctions against the Plaintiffs, nor has the Commission compelled them to act with respect to any part of the Empower Texans Complaints.

Any argument that merely being subjected to a Commission investigation can amount to a constitutional violation fails. Plaintiffs have not and cannot point to any recognized liberty or property interest that is threatened by being asked for information. There were no adverse findings associated with the Empower Texans Complaints, and even if there had been, Plaintiffs would have had a statutory

10

3950

right to *de novo* review before a court of any Commission determination.[26] Particularly where, as here, an administrative body's findings and conclusions are reviewable, "an inadequate or invalid investigation is insufficient to state a civil rights claim unless another recognized constitutional right is involved." *City of Laredo v. Leal*, 161 S.W.3d 558, 564 (Tex. App.—San Antonio 2004, pet. denied) (granting qualified immunity to defendant police chief because plaintiff officer's due process claim failed to allege violation of constitutional right related to his suspension hearing) (*citing Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996)); *see also Schaper v. City of Huntsville*, 813 F.2d 709, 715-718 (5th Cir. 1987) (due process does not require state to provide impartial decision-maker at pre-termination hearing where post-termination remedies available). Merely being subjected to an investigation that the Commission is statutorily authorized to undertake does not create a deprivation of any constitutional interest, particularly where, as here, the Commission did not find against Empower Texans on the complaints at issue or otherwise compel either Plaintiff to submit to any penalty, fine, or assessment. Because Plaintiffs have not been deprived of any recognized interest, they have not suffered any injury sufficient to establish standing to bring due process claims against the Commissioners.

*First Amendment*

The First Amendment protects the rights to freedom of religion, speech, assembly, and to petition the government for a redress of grievances. As with any other type of claim, a plaintiff lacks standing to bring—and, thus, the court lacks jurisdiction to hear—a First Amendment claim that does not allege a cognizable legal injury to the plaintiff in the form of deprivation of one of these rights. *See, e.g., Basiardanes v. Galveston*, 682 F.2d 1203, 1212 (5th Cir. 1982) (dismissing claim where plaintiff could not articulate cognizable injury to his First Amendment right to hear speech); *Bonilla v. State*, No. 05-11-01489-CR, 2012 Tex. App. LEXIS 10281, at *9 (Tex. App.—Dallas Dec. 12, 2012,

---

[26]*See* TEX. GOV'T CODE § 571.133.

11

3951

no pet.) (convicted felon lacked standing because he did not have First Amendment right that was violated by trial judge's decision to clear the courtroom during pre-trial hearing).

Here, Plaintiffs cannot establish their standing to bring any First Amendment claim because they cannot show that any of the Commission's actions at issue prevented Plaintiffs from speaking, compelled them to speak, or prevented them from assembling in violation of the First Amendment.[27] Plaintiffs allege First Amendment violations with respect to Claims 2 (prosecution without identifying authoritative statute); 5 (attempt to enforce Subpoenas); and 8 (enforcement of Subpoenas). Their alleged injuries with respect to each of these claims have simply *not occurred*, and, thus, cannot constitute any injury to establish standing.

In both of Claims 2 and 5, Plaintiffs allege that the Commissioners are "attempting" to interpret and enforce the Texas Election Code against Empower Texans "so as to trigger the requirement that such corporation register itself as a 'general-purpose committee.'"[28] Because the Commission dismissed the Empower Texans Complaints and terminated its investigation without requiring any compliance by Plaintiffs, the Commissioners have not taken any action requiring Empower Texans to register "as a general-purpose committee," and there is no evidence that Empower Texans has registered as a "general-purpose committee."

Similarly, Claim 8 alleges that the Subpoenas "*if complied with*, would provide the Commissioners and political opponents of Plaintiffs with information that is now constitutionally protected."[29] Because the Commission has withdrawn the Subpoenas and no longer seeks enforcement, the Subpoenas *have not been complied with* nor will Plaintiffs be compelled to comply

---

[27]Though Plaintiffs do not specify that their claims under the First Amendment sound in speech and assembly concerns, the Commissioners conclude as much based on the totality of the Petition's allegations.

[28]Second Am. Pet. ¶¶ 106, 108. The quoted language is identical in both paragraphs.

[29]Second Am. Pet. ¶ 109 (emphasis added).

12

3952

with them in the future. In all of its First Amendment claims, Plaintiffs cite only *anticipated* claimed injuries that will not come to pass now that the Empower Texans Complaints have been dismissed. Plaintiffs do not have standing to seek redress for First Amendment violations that never occurred, and their claims against the Commissioners should therefore be dismissed.

*Fourth Amendment*

The Fourth Amendment protects, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *New York v. Burger*, 482 U.S. 691, 699 (1987). It is axiomatic that if no search or seizure has taken place, the Fourth Amendment is not properly invoked, and a plaintiff does not have standing to assert a claim under it because that plaintiff has suffered no legally recognized injury.

All of Plaintiffs' claims for First Amendment violations (Claims 2, 5, and 8) also assert Fourth Amendment violations (Claims 3, 6, and 9) based on the same anticipated injuries—that Plaintiffs will be forced to reveal Empower Texans' members and other allegedly protected information if compelled to respond to the Subpoenas, or if Empower Texans is forced to register as a "general-purpose political committee."[30] As discussed above, there is no pleading much less evidence that Plaintiffs have ever been compelled to provide information to the Commission (either in response to the Subpoenas or any other request for information) or to register as a "general-purpose committee." Plaintiffs, therefore, have not been subjected to a "search" or "seizure" so as to invoke the protection of the Fourth Amendment, and they cannot seek redress for injuries that never occurred. *See, e.g., United States v. Jacobsen*, 466 U.S. 109, 120 (1984) (challenged police action was not a "search" that invoked protection of Fourth Amendment). For these reasons, Plaintiffs' Fourth Amendment claims against the Commissioners should be dismissed.

---

[30]*See* Second Am. Pet. ¶¶ 106, 108, 113.

13

3953

**B.      The Claims In Count IV Are Not Ripe.**

Because both doctrines contemplate the question of a plaintiff's legal injury, courts frequently consider standing and ripeness as narrowly distinguishable and, at times, interchangeable in determining whether they have jurisdiction to hear a case.  As the Texas Supreme Court has noted, "[r]ipeness, like standing, is a threshold issue that implicates subject matter jurisdiction, and like standing, emphasizes the need for a concrete injury for a justiciable claim to be presented.  *See* Davis & Pierce, II ADMINISTRATIVE LAW TREATISE, § 15.12, at 361 (3d ed. 1994) ("In many cases the two problems of standing and ripeness are merged; a party may lack standing because what has happened to him is not far enough developed, but the lack of development may be the essence of unripeness.") (citing *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998), and *Mayhew v. Town of Sunnyvale*, 905 S.W.2d 234, 244 (Tex. 1998)).

Applying the test for ripeness, Texas courts lack jurisdiction over a case where the "resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson*, 971 S.W.2d at 443 (collecting cases).  Where, as here, a case is brought prior to the resolution of an applicable administrative process, courts are particularly hesitant to intervene: "avoiding premature litigation prevents courts from entangling themselves in abstract disagreements over administrative policies while at the same time serving to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (*citing City of El Paso v. Madero Dev. & Constr. Co.*, 803 S.W.2d 396, 398-99 (Tex. App.—El Paso 1991, writ denied) (*citing Abbott Lab. v. Gardner*, 387 U.S. 136 (1967)).

This case demonstrates the very concern about interference in administrative process that the Supreme Court articulated in *Patterson*:  Plaintiffs had not suffered any legally cognizable injury at the time they brought this action, and the Commissioners' subsequent dismissal of the Empower Texans Complaints ensured that Plaintiffs would not suffer any of the anticipated claimed injuries they

14

allege in their Petition. Consequently, their claims that were not ripe at filing are neither ripe now nor will ever be ripe for adjudication. For this reason, Count IV should be dismissed.

## C. The Claims in Count IV Are Moot.

It is well-settled that "a court cannot decide a case that has become moot during the pendency of the litigation. A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties[.]" *Heckman*, 369 S.W.3d at 162 (*citing Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999)). Every claim in Count IV arises from Plaintiffs' assertion that the Commission's investigation of the Empower Texans Complaints *will* in some way violate Plaintiffs' constitutional rights. Because the Commission has issued a final determination dismissing the Empower Texans Complaints and thereby terminated its related investigation in its entirety, Plaintiffs will not be forced to comply with the Subpoenas or to otherwise face any penalty, fine, or assessment from the Commission. As such, to the extent Count IV seeks any sort of injunctive relief to prevent future harm, those claims against the Commissioners are now moot and should be dismissed.

## VI.
### PRAYER FOR RELIEF

For the foregoing reasons, the Commissioners respectfully request that the Court dismiss Count IV of the Petition in its entirety for lack of jurisdiction to hear the claims within it, and that the Court grant such other and further relief to which the Court finds the Commissioners entitled.

Respectfully submitted,

BECK REDDEN, LLP
A Registered Limited Liability Partnership

By:\_\_\_*/s/ Eric J.R. Nichols*_____
       Eric J.R. Nichols
       State Bar No. 14994900
       enichols@beckredden.com
       Amanda G. Taylor
       State Bar No. 24045921

15

ataylor@beckredden.com
Amy K. Penn
State Bar No. 24056117
apenn@beckredden.com
515 Congress Avenue, Suite 1900
Austin, Texas 78701
(512) 708-1000
(512) 708-1002 FAX

*Attorneys for Defendant Commissioners*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2017, I caused a true and correct copy of the foregoing Plea to the Jurisdiction to be served by e-service/email on lead counsel of record for Empower Texans and Michael Quinn Sullivan at the following addresses:

AKERMAN, L.L.P.
Joseph M. Nixon
joe.nixon@akerman.com
1300 Post Oak Blvd., Suite 2300
Houston, Texas
Telephone: 713.623.0887
Facsimile: 713.960.1527

*/s/ Eric J.R. Nichols*
Eric J.R. Nichols

3956

7/26/2017 3:08 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-14-001252
Nancy Rodriguez

CAUSE NO. D-1-GN-14-001252

| | | |
|---|---|---|
| EMPOWER TEXANS, INC., and MICHAEL QUINN SULLIVAN, | § § § | IN THE DISTRICT COURT OF |
| **Plaintiffs,** | § § § | |
| v. | § § § | |
| STATE OF TEXAS ETHICS COMMISSION, SEANAA WILLING, in hers capacity as Executive Director of the Texas Ethics Commission, TOM RAMSAY, individually and in his capacity as Commissioner, PAUL HOBBY, individually and in his capacity as Commissioner, HUGH C. AKIN, individually and in his capacity as Commissioner, JAMES T. CLANCY, individually and in his capacity as Commissioner, WILHELMINA R. DELCO, individually and in her capacity as Commissioner, WARREN T. HARRISON, individually and in his capacity as Commissioner, ROBERT K. LONG, individually and in his capacity as Commissioner, and CHARLES G. UNTERMEYER, individually and in his capacity as Commissioner, | § § § § § § § § § § § § § § § § § § § § § § | TRAVIS COUNTY, TEXAS |
| **Defendants.** | § | 53RD JUDICIAL DISTRICT |

## PLAINTIFFS' FOURTH AMENDED PETITION, REQUEST FOR DECLARATORY JUDGMENT, AND REQUEST FOR EQUITABLE RELIEF

TO THE HONORABLE STATE DISTRICT COURT JUDGE:

COME NOW Plaintiffs Empower Texans, Inc. ("**EMPOWER**") and Michael Quinn Sullivan ("**Sullivan**") and file Plaintiffs' Fourth Amended Original Petition, Request for Declaratory Judgment, and Request for Equitable Relief, and complain as follows:

### A. Discovery-Control Plan

1.    Plaintiff intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4 because the matter before this Court is legally complex.

2

42422513;1

4247

## B. Parties

2.      Plaintiff Empower Texans, Inc. is a Texas Nonprofit Corporation with offices located in Travis County, Texas.

3.      Plaintiff Michael Quinn Sullivan is an individual who resides in Travis County, Texas. He is a member of the Board of Directors and President of EMPOWER.

4.      Defendant the State of Texas Ethics Commission ("TEC") is the governmental agency charged with administering the provisions of the Texas Election Code and Texas Government Code at issue in this case. The Texas Ethics Commission has been served and made appearance in this case.

5.      Defendant Seanaa Willing ("**Willing**") is the Executive Director of the Texas Ethics Commission. She is sued in her official capacity. The previous executive director Natalia Luna Ashly, had been served and appeared in this case.

6.      Defendant Thomas Ramsay ("**Ramsay**") is a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Ramsay has been served at his residence, 269 N Keith, Mt. Vernon, TX 75457, and appeared herein.

7.      Defendant Paul Hobby ("**Hobby**") was a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Hobby has been served at his residence, 2131 San Felipe, Houston, TX 77019, and appeared herein.

8.      Defendant Hugh C. Akin ("**Akin**") is a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Akin has been served at his place of employment, 325 North St. Paul Street, Suite 3920, Dallas, TX 75201, and appeared herein.

2

9. Defendant James T. Clancy ("**Clancy**") is a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Clancy has been served at his residence, 124 Hawthorne Place, Portland, TX 78374, and appeared herein.

10. Defendant Wilhelmina R. Delco ("**Delco**") is a Commissioner of the Texas Ethics Commission. She is sued in her individual and official capacity. Delco has been served at her residence, 1805 Astor Place, Austin, TX 78721, and appeared herein.

11. Defendant Warren T. Harrison ("**Harrison**") is a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Harrison has been served at his residence, 13426 Janwood Lane, Farmers Branch, TX 75234, and appeared herein.

12. Defendant Robert Long ("**Long**") is a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Long has been served at his residence, 1022 Lovers Lane, Bastrop, TX 78602, and appeared herein.

13. Defendant Charles G. Untermeyer ("**Untermeyer**") is a Commissioner of the Texas Ethics Commission. He is sued in his individual and official capacity. Untermeyer has been served at his residence, 3608 Locke Lane, Houston, TX 77027, and appeared herein.

## C. Jurisdiction and Venue

14. This Court has jurisdiction over the claims arising under the Texas Government Code. TEX. GOV'T CODE ANN. § 571.137(d)(West) ("A respondent has the right to quash a subpoena as provided by law.").

15. This Court has jurisdiction under 42 U.S.C. § 1983.

16. Venue is proper in this Court because defendants Seanaa Willing and the TEC are located in this county. Venue is also proper in this county because Defendant Wilhelmina Delco resides in Travis County.

3

17. Additionally, a substantial part of the events giving rise to this claim occurred in this county.

## D. Facts

18. EMPOWER was incorporated on or about April 14, 2006. *See* Exhibit 1. On November 7, 2006, EMPOWER began doing business using the name ***Texans for Fiscal Responsibility*** throughout the State of Texas. *See* Exhibit 2. On January 6, 2007, EMPOWER was granted, pursuant to its application to the Internal Revenue Service, tax exempt status under Internal Revenue Code § 501(c)(4). *See* Exhibit 3.

19. From its inception, EMPOWER has been a direct advocacy entity that has as its primary purpose the informing of voters, taxpayers and elected officials about policy solutions that are consistent with the principles of individual liberty and free markets, while working to build support for those policies among key constituencies to create and sustain a system of strong fiscal stewardship within all levels of Texas government, ensuring the greatest amounts of economic and personal liberty, and promoting public policies that provide individuals with the freedom to use their strengths and talents in pursuit of greater opportunities. EMPOWER accomplishes its goal by direct communications with citizens through direct mail, email, and social media. *See* Exhibit 4 (*Texas Monthly*, Jan 2013). It also holds numerous town hall meetings, including several involving leading fiscal conservatives such as former Governor Perry, Governor (and former Attorney General) Abbott, and members of the Texas Legislature.

20. EMPOWER provides high-valued and very important endorsements of certain Texas state-level candidates that identify with, follow and promote a conservative fiscal agenda. EMPOWER also recognizes those public officials who emulate this in their public service by bestowing fiscal accountability awards.

4

21.     EMPOWER distributes weekly email newsletters to now over 150,000 addresses, chiefly outlining government policy that has economic implications at the state level. It is deemed to be "new media," in that it publishes news and editorial comment through the internet and use of social media.

22.     Additionally, Plaintiff Sullivan, EMPOWER's President, is frequently quoted in print media sources in major Texas markets, such as the Houston Chronicle, Dallas Morning News, and the Austin American Statesman.[1] Sullivan is a weekly guest on radio programs throughout the State of Texas and EMPOWER's Facebook site has over 82,000 fans on its Facebook site (the Facebook site uses the Texans for Fiscal Responsibility name), has posted over 170 YouTube videos that have thousands upon thousands of views, and over 9,500 Twitter followers (the Twitter handle is @EmpowerTexans). Furthermore, Plaintiff EMPOWER's staff have been invited to give hundreds of speeches before groups and organizations around the State of Texas. It is through these forms of media that EMPOWER communicates regularly with its members.[2]

23.     Sullivan, a current journalist and former newspaper reporter, was employed as President of EMPOWER beginning in April 2006, a position that he currently holds. Sullivan is also a member of the Board of Directors of EMPOWER.

24.     During the 2007 Regular Session of the Texas Legislature, EMPOWER engaged in direct mailing efforts to voters calling on Legislators to return a tax surplus that was in excess of $13 billion and worked to uphold reforms to the Children's Health Insurance Program. At

---

[1] For example, a Westlaw Texas newspaper and magazine search of the phrase "Texans for Fiscal Responsibility" results in over 210 articles that mention the organization, its purpose from almost all of the major newspapers in Texas to such sources as the *New York Times* and *U.S. News & World Reports*.

[2] Members of EMPOWER are those individuals who have filled out a form providing their name and personal information such as phone numbers and physical address, and their email addresses. Effectively, these members are subscribers.

5

the conclusion of the 2007 Legislature, EMPOWER mailed a scorecard to voters grading legislators on their Fiscal Responsibility Index, a compilation of factors based upon bill authorship and each Legislator's vote on legislation, to registered voters throughout Texas. Scorecarding is an important accountability measure that EMPOWER continues to this day. EMPOWER now also publishes a free weekly/monthly newspaper called "Texas Scorecard" in furtherance of this purpose.

25.     Following the 2007 Texas Legislative Session, Sullivan formed Empower Texans PAC, a Texas general purpose political committee. *See* Exhibit 5. This PAC, which is a separate and distinct legal entity not under the direct operation or control of EMPOWER, has periodically received and disclosed contributions from EMPOWER for administrative and overhead expenses.[3] Furthermore, Empower Texans PAC continues operations today and complies with all state and federal campaign finance regulations.[4] The PAC discloses all of its donors and expenditures, as well as candidates and measures it supports or opposes.[5] Despite constant protestations of Plaintiffs, Defendant TEC regularly confuses the disclosed activities of Empower Texans PAC with those of EMPOWER.

26.     In January 2010, the U.S. Supreme Court issued an opinion in *Citizens United v. Federal Election Com'n*, 558 U.S. 310 (2010), that had the effect of invalidating Texas' longstanding ban against corporate electioneering activity.

---

[3] A corporation is generally prohibited from making a contributing to a general purpose political committee. TEX. ELEC. CODE § 253.094. However, as an exception to the prohibition, a corporation is allowed to contribute to a general purpose committee for statutorily authorized overhead type expenses associated with operating a committee. TEX. ELEC. CODE § 253.100.

[4] No sworn complaints have been filed against Empower Texas PAC with the Texas Ethics Commission.

[5] See http://www.ethics.state.tx.us/php/filer.php?acct=00061927GPAC on the Texas Ethics Commission website for a complete list of all filings made by Empower Texans PAC.

6

27.    After *Citizens United*, the 82nd Legislature of Texas passed House Bill 2359 to amend the Election Code to incorporate the TEC's advisory opinion regarding changes to the constitutionality of the code. H.B. No. 2359, 82nd Leg. (Tex. 2011). In relevant part, the bill repealed all sections of the code prohibiting a single corporation from making direct campaign expenditures.[6]

28.    Beginning in 2012, Plaintiff EMPOWER, through its board of directors, mindful of the major purpose limitations imposed on it as a 501(c)(4) social welfare organization, chose to authorize corporate funds to be used for independent expenditures for political activity. *See* Exhibit 6. The corporation discloses all of its direct campaign expenditures as required by the Election Code.

29.    On April 20, 2012, sworn complaints SC-3120485 and SC-3120486 were filed by State Representatives Jim Keffer and Vicki Truitt with the TEC against EMPOWER ("EMPOWER Complaints") and included allegations relating to an alleged failure to report direct campaign expenditures by a person not acting in concert with another person and, in the alternative, the alleged failure to file a campaign treasurer appointment and campaign finance reports by a general-purpose committee. The complaints, identically filled out by an agent of Representative Keffer, the information for which was assembled by Steve Bresnen, a registered lobbyist, were based only upon "information and belief." *See* Exhibit 7 and 8, respectively.[7] The complaints' assertion is that the endorsement of candidates and public reporting of the fiscal responsibility index of legislators caused EMPOWER to morph into a PAC and that EMPOWER

---

[6] The Texas Ethics Commission in its Advisory Opinion number 489 (2010) states that the phrase "independent expenditure" is interchangeable with the phrase "direct campaign expenditure" in Texas law for the purpose of determining the effects of *Citizens United v. FEC*, 558 US 310 (2010) upon Title 15 of the Texas Election Code. This oddity must be kept in mind since "direct campaign expenditure" has a different meaning in federal jurisprudence.

[7] Representatives Keffer and Truitt have both testified that neither actually wrote the complaints. They just signed the complaints with "information and belief." The true author(s) of the complaints is still not known for a certainty.

7

was obligated to file reports to that status. The desired effect of the EMPOWER Complaints is to use the TEC as a means to force EMPOWER to disclose its donors and members in contradiction to both well known and established federal and state law. *See NAACP v. Alabama*, 357 U.S. 449 (1958) and *In Re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371 (Tex. 1998).

30.     Also on April 20, 2012, sworn complaints SC-3120487 and SC-3120488, were filed by State Representatives Jim Keffer and Vicki Truitt with Defendant TEC against Plaintiff Michael Quinn Sullivan in his individual capacity ("Sullivan Complaints") and included allegations that Mr. Sullivan failed to register as a lobbyist for calendar years 2010 and 2011 as required by TEX. GOV'T CODE § 305.003.[8]

31.     Similar to the EMPOWER Complaints, those complaints were based only upon "*information and belief*," and not on any factual allegation. *See* Exhibits 9 and 10, respectively.

32.     On or about June 5, 2012, Plaintiffs filed verified denials of all the allegations made by Representatives Jim Keffer and Vicki Truitt. In those verified denials, Plaintiffs requested that the TEC conduct a preliminary review hearing and subpoena Representatives Jim Keffer and Vicki Truitt to appear at the preliminary review hearing to give testimony.

33.     On April 8, 2013, the Defendant's, despite not having voted to expand its investigation beyond the original complaints, propounded eight (8) pages of questions on Plaintiff Michael Quinn Sullivan. *See* Exhibit 11.

---

[8] A final order as to complaints SC-3120487 and SC-3120488 was issued on July 23, 2014 and appealed *de novo* in Cause No. 14-06508-16 in the 158th District Court in Denton County. A final judgment dismissing those complaints in favor of Sullivan was entered on March 18, 2015. The TEC appealed that judgment to the Second Court of Appeals in Cause No. 02-15-00103-CV. The Second Court of Appeals reversed the trial court on venue grounds and that case is new pending on remand in Travis County as Cause No. D-1-GN-17-001878 in the 250th District Court.

8

34. On April 23, 2013, the Defendant's further propounded four questions on EMPOWER, including a request for "...the name and address of each person that made a contribution to [Empower Texans, Inc.] during the period from January 1, 2011, to December 31, 2011...[and]...the date and amount of the contribution." *See* Exhibit 12.

35. On May 10, 2013, Plaintiffs responded to the questions propounded by TEC and, along with interposing objections, asserted their statutory and constitutional rights. *See* Exhibits 13 and 14. Plaintiffs asserted, among other objections, that much of the information requested by the TEC violated the First, Fourth, and Fourteenth Amendments to the United States Constitution. EMPOWER, in objecting to the requests, relied upon the Texas Supreme Court's decision in *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371 (1998), which held that the government may not compel the production of donors to a non-profit organization, relying upon *NAACP v. Alabama*, 357 U.S. 449 (1958).

36. On June 26, 2013, the Defendant's delivered a Public Inspection Request to Plaintiff EMPOWER, requesting copies of the application for tax-exempt status filed with the Internal Revenue Service, along with the annual information returns for 2010, 2011, and 2012. *See* Exhibit 15.

37. On July 2, 2013, Plaintiff Michael Quinn Sullivan received two subpoenas to appear and give testimony at a preliminary review hearing on August 8, 2013 for all four (4) complaints.

38. On July 25, 2013, EMPOWER responded to the Public Inspection Request of TEC and provided the Internal Revenue Service forms requested for tax years 2010, 2011, and 2012.

9

39.    On August 8, 2013, TEC conducted a combined preliminary review hearing, presided over by Defendant Jim Clancy, on both the EMPOWER and Sullivan Complaints.  In compliance with the Defendant's subpoena, Sullivan, represented by counsel, appeared at the preliminary review hearing.

40.    On August 21, 2013, TEC issued a subpoena in the Sullivan Complaints to Plaintiff Michael Quinn for production of documents.  *See* Exhibit 16.

41.    On September 9, 2013, Plaintiffs filed Objections and Responses to Defendant TEC's subpoenas of documents.

42.    On October 29, 2013, the Defendants conducted a second preliminary review hearing on the Sullivan Complaints wherein they subpoenaed Representative Jim Keffer, Vicki Truitt, Steve Bresnen, and Plaintiffs to appear and give testimony.

43.    On October 30, 2013, the Defendants conducted a second preliminary review hearing on the EMPOWER Complaints wherein they subpoenaed Representative Jim Keffer, Vicki Truitt, Steve Bresnen, and Plaintiffs to appear and give testimony.

44.    On November 4, 2013, the Defendants met and voted to propose a settlement only of the Sullivan Complaints for a $500.00 civil penalty for 2010 and 2011, each, and the retroactive registering and filing of the required monthly lobby disclosures for each month of 2010 and 2011.

45.    On November 13, 2013, Sullivan rejected the settlement offer of Defendants because accepting the Defendants settlement offer would require Sullivan to: 1) acquiesce in the position of TEC that his journalistic activities of reporting, editorializing, and score-carding constituted lobbying; 2) incorrectly agree that the state statutory definition of lobbying is constitutionally valid; 3) unconstitutionally require him to pay the state a lobby registration fee

10

of $750 before he communicates with public officials; and 4) **subject him to possible criminal prosecution**.

46. On November 5, 2013, the Defendants wrote to its staff counsel and counsel for EMPOWER requesting briefing on the issue of whether there could have been violations of a statute enforced by the Defendants as a matter of law as it relates to the EMPOWER complaints. Exhibit 17. The Defendants were unsure, assuming facts in the complaint were true, whether EMPOWER's alleged conduct was legally proscribed.

47. The staff counsel responded with its brief on November 21, 2013. Exhibit 18. EMPOWER chose not to respond. The TEC's staff argued to the Commission:

> "Under State law, if a group of persons has as a principal purpose accepting political contributions or making political expenditures, then the group constitutes a political committee and is subject to the requirements relating to the appointment of a campaign treasurer."

With this argument, the TEC's staff sought to redefine EMPOWER from a 501(c)(4) educational non-profit corporation into a PAC, thereby requiring the disclosure of EMPOWER's donors and members, in direct contravention of the First Amendment. *See NAACP* and *In re Bay Area Citizens Against Lawsuit Abuse, supra.*

48. Unable to decide whether the Defendants could magically turn EMPOWER into a PAC from a 501(c)(4) entity, on January 28, 2014, the TEC issued a Notice of Formal Hearing on the EMPOWER Complaints citing "...that **there is insufficient credible evidence of violations of laws administered** and enforced by the commission." At this point the Defendants knew that the alleged conduct of EMPOWER, even if true, did not clearly violate any provision of the Election Code. Nonetheless, the Defendants also issued a Notice of Formal Hearing on the Sullivan Complaints to be heard at the same time. Exhibit 19.

11

49.     On February 12, 2014 a Pre-Hearing Conference on both the EMPOWER and Sullivan Complaints was held by the Defendants. Plaintiffs participated in the conference and objected to the lack of procedural rules governing the formal hearing process and the resulting infringement of Plaintiffs' due process rights.[9]

50.     At the pre-hearing conference, Defendants voted unanimously to issue two subpoenas drafted by TEC's staff counsel, one to each Plaintiff, requesting the production of documents by March 5, 2014. These subpoenas are attached hereto as Exhibit 21. Additionally, Defendants set a schedule whereby pre-hearing motions by Plaintiff would not be heard until March 14, 2014, meaning Plaintiffs had no recourse to the subpoenas that were issued. The Defendant members of the TEC knew there was no legal basis or theory to request from Plaintiff's the documents listed in the subpoena.

51.     The subpoenas issued by the Defendants and served on Plaintiffs ordered the production of an overly-broad, sweeping array of largely irrelevant documents, as a federal court would later recognize and acknowledge.

52.     Here, it is notable that Sullivan and other EMPOWER staff write articles and columns for both EMPOWER and other entities on fiscal and political issues involving the State of Texas. Sullivan relies on sources from the Legislature and elsewhere in state and local government. The Defendants were advised of this concern before the subpoenas were prepared. The Defendants, in their subpoena, were attempting to "out" any source that has contacted either Plaintiff or had communications with Sullivan, so that these sources would be known and then

---

[9] Although statutorily required to do so by TEX. GOV'T CODE § 571.131(c), the TEC has failed and refuses to adopt rules governing the process of conducting a formal hearing. A true and correct copy of the transcript of the hearing is attached as Exhibit 20 and is incorporated by reference as if set out fully herein.

42422513;1

silenced. There is no other reason to request information about sources. This is the very definition of an impermissible chilling effect on freedom of speech.

53. With an understanding of the lack of clarity in the Texas Election Code, on February 13, 2014, the Defendants voted to propose new rules regarding what constituted campaign contributions and expenditures for purposes of reporting under the Texas Election Code. The proposed rules would encompass contributions and expenditures that are made to or by a non-profit corporation that chose to make a direct campaign expenditure and would require the reporting of those contributions. *See* Exhibit 22. Recall that the Defendants requested briefing on this issue and were uncertain whether a statute could have been violated by EMPOWER. By unlawfully legislating through rulemaking, the Defendants sought to redefine "campaign contribution" and "campaign expenditure" into terms which might capture the First Amendment activities of EMPOWER through an ex post fact rule change.

54. In response, Plaintiffs filed suit in Federal Court on February 26, 2014 complaining of the Defendants' various violations of the Plaintiffs' constitutional rights regarding the subpoenas.

55. On March 20, 2014 a hearing was held in front of the Honorable United States District Court Judge Samuel Sparks on Plaintiffs' application for Temporary Restraining Order/Preliminary Injunction.

56. Judge Sparks, while finding that subpoenas were "**absurd**" and "**overbroad**," the Court declined jurisdiction over this matter under the *Younger*[10] abstention doctrine and as that doctrine is applied by *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013). Exhibit 23 at p. 31, l. 10-16, p. 45, l. 13-16 (March 20, 2014 Hearing Transcript).

---

[10] *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

13

57.     In an action that was expressly as a result of, and in response to, the temporary restraining order hearing on March 20, 2014, on April 3, 2014 the Defendants withdrew the original subpoenas and issued two (2) new subpoenas. Exhibit 24 and 25.

58.     With this second set of subpoenas, the Defendants appeared to *attempt* to address the *NAACP v. Alabama*[11] problem that existed in the first subpoenas by allowing limited redaction, but then the Defendants took the opportunity for the first time to expressly require the production of attorney/client documents, documents from non-parties to this litigation, documents from a non-party PAC, and vast classifications of documents that are not reasonably calculated to lead to the discovery of otherwise admissible evidence. *See* Exhibits 24 and 25.

59.     In response to Plaintiffs' arguments that both the theory of liability and the discovery itself violated several of the Plaintiffs' constitutional rights, on April 3, 2014, during a hearing in front of the TEC, John Moore ("**Moore**"), Director of Enforcement and Chief Staff Counsel for the TEC, testified and counseled the TEC to ignore the Constitution:

> You are determining in this hearing whether Mr. Nixon's clients violated those statutes, the election code, the lobby code, the lobby act, or not. That's what you are here to determine. That's what the case is here for. **It's not to determine whether something is constitutional or not. Mr. Nixon has other remedies for that if he wants to do those.**
>
> The case before you is based on the evidence. Is there a violation of the acts? That's all you have to determine. Our subpoenas -- I understand Judge Sparks' complaint was, it says any and all. That's too broad for me. For some judges it is, for some judges it isn't.
>
> We made the effort through our attorneys, through the attorney general's office in the litigation to make the subpoenas more specific, and they are more specific. They give Mr. Nixon definitions. We are not asking for him to produce the definitions. We are asking for him to produce the documents that are listed. **We are not asking -- if he has privileged information he wants to object to the production of, he has**

---

[11] *NAACP v. Alabama*, 357 U.S. 449, 462-63, 78 S. Ct. 1163, 1171–72 (1958).

14

**the ability to do that.  Instead, he hides behind it's not constitutional.**
**Well, again, he has another forum to hear that in.**

Exhibit 26 at 37:25-38:25 (April 3, 2014 TEC hearing transcript) (emphasis added).

60.     The Defendants followed Moore's advice and withdrew the original subpoenas and, over the objection of counsel for Plaintiffs, issued the substantially more invasive and plainly unconstitutional subpoenas.  *See* Exhibit 26 at 54:15-55:5 and 66:13-67:11 (April 3, 2014 TEC hearing transcript); *see also* Exhibit 24 and 25.

61.     The revised subpoenas were also infirm and violated the Plaintiffs' constitutional rights as follows:

    a.   The Subpoenas requests all information from both a non-profit (Internal Revenue Code § 501(c)(4)) and its related **non-party PAC**;[12]

    b.   The Subpoenas expressly request attorney/client privileged documents;[13]

    c.   The Subpoenas require the creation of non-existent "email list[s]";

---

[12] The amended subpoenas include the following definition:

> "Empower Texans" means Empower Texans, Inc., including but not limited to Empower Texans doing business as Texans for Fiscal Responsibility; **any other affiliated or subsidiary entities to Empower Texans**;....

Exhibits 24 and 25 at Definition 21 (emphasis added).

[13] The amended subpoenas include the following definitions:

> **"Document" means every writing or record of whatever type** and description in the possession, custody or control of Michael Quinn Sullivan (**including all writings and records that have been transferred from Michael Quinn Sullivan to** his accountants, **attorneys**, or consultants), however made, and includes all handwritten, typed, printed, recorded, transcribed, taped, filmed, graphic- or sound-reproduction material, magnetic cards or cartridges, optical storage devices, and computer records, printouts, runs, cards, tapes, or disks (together with all programming instructions and other material necessary for their use)....
>
> **********
>
> "Empower Texans" means Empower Texans, Inc., including but not limited to Empower Texans doing business as Texans for Fiscal Responsibility; any other affiliated or subsidiary entities to Empower Texans; and any and all of officers, directors, employees, **attorneys**, representatives, agents, or any other persons acting on behalf of any such entity, including but not limited to Michael Quinn Sullivan, Austin Kerr, and Dustin Matocha.

Exhibits 24 and 25 at Definition 14 and 21 (emphasis added).

15

d. The Subpoenas requested: "statements or charts of organization; **telephone and personnel directories**; press releases; web page content and postings; announcements; notices; statements of procedure and policy; biographies and **personnel files**; individual appointment calendars and schedules; card files; diaries; records of email; telephone logs; routing slips; **records or evidence of incoming and outgoing telephone calls**; itineraries; activity reports; travel vouchers and accounting; **bank records; accounting and bookkeeping records** and materials; financial records and statements; **external or internal correspondence**; cables; telexes; teletypes; telegrams; telecopies; **verbal or written communications**; memoranda; letters; messages; reports; plans; forecasts; summaries; briefing materials; studies; notes; working papers; graphs; maps; charts; diagrams; agendas; minutes; transcripts, records, or **summaries of any meeting, conversation, conference or communication**; and all attachments to any of the items set forth in this paragraph."

62. In response, Plaintiffs filed a Motion to Quash with the TEC. *See* Exhibit 27 (Motion to Quash in the TEC).

63. On April 25, 2014, Judge Sparks dismissed the federal court suit, taking the Plaintiffs' allegations as true and holding that the Plaintiffs may bring the instant action when he wrote:

> The third element of the *Younger* abstention doctrine asks whether Plaintiffs had, or will have, "an opportunity to present their federal claims in the state proceedings." *Juidice v. Vail,* 430 U.S. 327, 337 (1977). Plaintiffs' "failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Id.* In this case, there are (or were) adequate opportunities for Plaintiffs to present their constitutional claims. A formal hearing before the TEC is subject to the procedural protections of the Texas Administrative Procedure Act. TEX. GOV'T CODE § 571.139(c); *see also id. §§* 2001.051-.202. Plaintiffs may appeal any adverse final decision rendered by the TEC, and receive a trial de novo in which their constitutional challenges may be litigated. *See id.§§* 2001.171-.173.
>
> **With respect to the subpoenas in particular, Plaintiffs could have also moved for a protective order (i.e., moved to quash) in the district court.** *Id.* § 571.137(d) ("A respondent has the right to quash a subpoena as provided by law.").

42422513;1

Exhibit 28 at 6 (April 25, 2014, Hon. Sparks Order) (emphasis added)

64. It is further an issue of constitutional dimension which now affects and violates the Plaintiffs' rights that the Defendants, in contradiction to what it informed Judge Sparks, has pleaded sovereign immunity as an affirmative defense to the Plaintiffs' motion to quash contained in this suit.

65. On May 29, 2014, the Defendants took up and considered the objections of the Plaintiffs to the TEC's second set of subpoenas issued collectively in all four complaints. After some discussion, the TEC revised the subpoenas as stated in its Order of May 29, 2014 and attached hereto as Exhibit 29.

66. Plaintiffs objected to this newest subpoena as written by the Order of May 29, 2014 and also filed its Objections and Responses to the TEC's Order for Production. Exhibit 30.

67. On June 25, 2014, the Defendants took up and considered the complaints against Sullivan, SC-3120487 and SC-3120488, in formal, evidentiary hearings. Exhibit 31, p. 6, lines 16-18. The parties had several motions pending, including Plaintiffs' Motion to Quash (Exhibit 27) and Defendants' Objections and Responses to the TEC's Order of Production (Exhibit 30). Instead of ruling on Plaintiffs' Motion to Quash the latest subpoena or ruling on the objections (Exhibit 29), the Defendants took them under advisement and did not rule on any pending motions of either side or the Plaintiffs' objections. Exhibit 31, p. 6, lines 19-22.[14]

68. The Defendants issued a formal, final order on July 23, 2014. Exhibit 32. The final order was appealed *de novo* pursuant to TEX. GOV'T. CODE § 571.133. The cases against Sullivan, individually, asserting he was required to register as a lobbyist, are therefore not before the TEC or this Court.

---

[14] The TEC did not hear at that time the complaints against EMPOWER, SC-3120485 and SC-3120486.

69. Despite repeated requests, the Defendants refused to set the cases, SC-3120485 and SC-3120486, against EMPOWER for formal hearing. The TEC has never been unable to determine, let alone publically state, what statute, if any, EMPOWER may have violated.

70. On December 19, 2014, the Austin Court of Appeals issued its opinion in *Sylvester, et al v Texas Association of Business, et al,* 453 S.W.3d 519 (Tex. App. – Austin, 2014). The present case contains facts and allegations remarkably similar to those in *Sylvester v TAB*. After analyzing the facts and applicable law, the court of appeals in *Sylvester* made the following statements:

> "Further, appellants have not cited, and we have not found, post-*Citizens United*, authority that would support appellants' position that an incorporated trade association such as TAB, by seeking money from corporations to fund, and then funding, constitutionally protected, independent expenditures, subjected itself to the 2002 regulatory scheme directed to political committees."
>
> …
>
> "Were we to interpret 'principal purpose' in the definition of "political committee" as suggested by appellants so that corporations making independent political expenditures morph into political committees under the Election Code as it existed in 2002 when they made expenditures, **the definition would be an affront to the First Amendment**."

71. The *Sylvester* court went on to explain why a suggested definition of political committee is totally inconsistent with the overall framework of the Election Code, including re-affirming its holding in *King Street Patriots v Texas Democratic Party,* 459 S.W.3d 631 (Tex. App. – Austin, 2014, affirmed in part and vacated in part on other grounds), that the Texas Election Code is clear that "principal purpose" is the first, highest or foremost goal (see footnotes 10 and 11), meaning there can only be one principal purpose.

18

72. The TEC's staff lawyers were made aware of the *Sylvester* decision and it's holding on December 23, 2014, and in a memo from its General Counsel to TEC staff wrote in part:

**"I think this case could be used against us by those wishing to argue that a corporation cannot be a political committee."**

A true and correct copy of this memo is attached Exhibit 35.

73. Instead, and despite not having any jurisdiction over Sullivan individually and knowing that the controlling case law eviscerated the allegation of a violation of the Elections Code by EMPOWER, the Defendants moved to report to the Travis County District Courts the failure of both EMPOWER and Sullivan to comply with subpoenas as required by the Order of May 29, 2014. Exhibit 33. It is significant to note that at this point the Defendants were aware and knowledgeable that its theory of liability against EMPOWER was specifically rejected by the Austin Court of Appeals. Before, the Defendants were admittedly uncertain of the law; now they knew they were legally wrong in pursuing a complaint against EMPOWER.

74. Plaintiffs, in response to the Motion to Compel, explained to the Defendants that the Order of May 29, 2014 sought documents mostly against Sullivan, personally, as it related to the lobby case. Counsel further explained that the controlling case law conclusively decided that there was not a violation of a statute by EMPOWER. Further, as it relates to the claim against EMPOWER, the Defendants were informed that either the responsive documents had been produced or do not exist because of the definitions in the Order. A transcript of the hearing in which this was explained formally to the Commission is attached as Exhibit 34.

75. With the full knowledge that they had no legal basis to do so and admitting that Sullivan was not a party before it, (Exhibit 34 p. 26, lines 11-17) and that EMPOWER had produced relevant, responsive documents, the Defendants unanimously voted to grant the Staff's

19

Motion to Report to District Court the failure of EMPOWER and Sullivan to comply with subpoenas (Exhibit 34, p. 44, lines 10 - 25). The Defendants willfully chose to ignore the *Sylvester v TAB* court decision.

76.     The exhibits attached to this Petition are as follows:

| Exhibit No. | Date | Description |
| --- | --- | --- |
| Exhibit 1 | 04/14/06 | Articles of Incorporation of Empower Texans, Inc. |
| Exhibit 2 | 11/07/06 | Assumed Name Certificate of Empower Texans, Inc. |
| Exhibit 3 | 01/06/07 | 501(c)(4) letter |
| Exhibit 4 | 01/13 | Texas Monthly article |
| Exhibit 5 | 07/12/07 | Appointment of Treasurer of Empower Texans PAC |
| Exhibit 6 | 05/21/12 | First Direct Campaign Expenditure Report of Empower Texans, Inc. |
| Exhibit 7 | 04/20/12 | Keffer complaint against Empower Texans |
| Exhibit 8 | 04/20/12 | Truitt complaint against Empower Texans |
| Exhibit 9 | 04/20/12 | Keffer complaint against Sullivan |
| Exhibit 10 | 04/20/12 | Truitt complaint against Sullivan |
| Exhibit 11 | 04/08/13 | TEC Questions for Sullivan |
| Exhibit 12 | 04/23/13 | TEC Questions for Empower |
| Exhibit 13 | 05/10/13 | Empower Texans' Response to TEC Questions |
| Exhibit 14 | 05/10/13 | Sullivan's Response to TEC Questions |
| Exhibit 15 | 06/26/13 | Public Inspection Request from TEC |
| Exhibit 16 | 08/21/13 | TEC subpoena for documents to Sullivan |
| Exhibit 17 | 11/05/13 | TEC's letter requesting additional briefing |
| Exhibit 18 | 11/21/13 | Commission Staff Briefing in response to the Commission's request of November 5, 2013 |

20

| Exhibit 19 | 01/28/14 | TEC's Notice of Formal Hearing |
|---|---|---|
| Exhibit 20 | 02/12/14 | TEC hearing transcript |
| Exhibit 21 | 03/05/14 | TEC document subpoenas to Sullivan and Empower |
| Exhibit 22 | 02/13/14 | TEC proposed rule |
| Exhibit 23 | 03/20/14 | Federal court hearing transcript |
| Exhibit 24 | 04/03/14 | TEC second subpoena to Empower Texans |
| Exhibit 25 | 04/03/14 | TEC subpoena to Sullivan |
| Exhibit 26 | 04/03/14 | TEC hearing transcript |
| Exhibit 27 | 04/21/14 | Sullivan's and Empower Texans' Motion to Quash |
| Exhibit 28 | 04/25/14 | Order of Judge Sparks |
| Exhibit 29 | 05/29/14 | Order on TEC revising the second set of subpoenas |
| Exhibit 30 | 06/13/14 | Plaintiff's Objections and Responses to the TEC's Order of May 29, 2014 |
| Exhibit 31 | 06/25/14 | Transcript of formal hearing in SC-3120487 and SC-3120488 |
| Exhibit 32 | 07/23/14 | Final Order in SC-3120487 and SC-3120488 |
| Exhibit 33 | 05/25/15 | TEC's Staff's Motion to Report to District Court the Failure of Sullivan and Empower to Comply with Subpoenas |
| Exhibit 34 | 06/11/15 | Transcript of the TEC hearing on 6-11-15 |
| Exhibit 35 | 12/23/14 | Ian Steusloff memo |
| Exhibit 36 | 12/21/15 | Injunction hearing transcript |
| Exhibit 37 | 09/07/16 | Suggestion of Mootness |
| Exhibit 38 | 09/20/16 | TEC Staff's Motion to Dismiss for Insufficient Credible Evidence |
| Exhibit 39 | 10/13/16 | TEC's Dismissal of the Complaints |

42422513;1

| Exhibit 40 | 09/07/16 | TEC's Dismissal of the Enforcement Suit [15] |
| Exhibit 41 | 07/18/16 | Untermeyer editorial |

77. On October 5, 2015, the TEC filed *Texas Ethics Commission v Empower Texans, Inc. and Michael Quinn Sullivan* in "(The Enforcement Suit)"Cause No. D-1-GN-15-004455 in the District Court of Travis County, Texas in the 345th Judicial District. That suit sought to enforce the subpoenas as written by the TEC against these Plaintiffs.

78. The Enforcement Suit was answered by Plaintiffs, as required by law and procedure. The Defendants, however, did nothing to prosecute the suit. The suit was used by Defendants as a means to threaten, harass and intimidate Plaintiffs. The Defendant's publicized the enforcement suit when it was filed, but did not prosecute it.

79. As a corollary to the Enforcement Suit and in furtherance of the defense of its constitutional rights, Plaintiffs filed in this action a Request for Temporary Injunction against enforcement of the subpoenas. A hearing was held on December 21, 2015. The trial court denied the request for an injunction and the Plaintiffs appealed the denial of the temporary injunction.

80. At the injunction hearing, the Defendants chose not to defend the subpoenas. Instead, the Defendants argued they only needed to obtain a "miro-subset" of documents originally demanded in the subpoena (see hearing transcript Exhibit 36, p 55, line 17 – p 56, line 4; p 65, line 24 – p 66, line 7; p 67, lines 16-24). Clearly, the Defendants never needed nor wanted all of the documents subpoenaed and subjected to the enforcement suit (Exhibit 36, p 62, line 20 – p 63, line 6). The statement of the Defendants that they only needed this "micro-subset" is an admission of their intent to harass and intimidate the Plaintiffs by the issuance of overly broad subpoenas which required the production of constitutionally privileged information.

___

[15] Because the exhibits are voluminous, Plaintiffs incorporate by reference the prior filed exhibits and files only anew Exhibits 36-40.

42422513;1

81. Plaintiffs appealed the trial court's denial of injunctive relief to the Austin Court of Appeals. The case was fully briefed by both sides and set for oral hearing on September 16, 2016. The week before the oral hearing, the Defendants, without notice of a meeting under the Open Meetings Act, totally withdrew the subpoena made the subject of this and the enforcement suit. Plaintiffs were not given notice of the formal meeting of the TEC or the intent of the Defendants to withdraw the subpoenas.

82. Defendants next took the unusual step of filing with the Austin Court of Appeals, a "Suggestion of Mootness" and asked the court to postpone oral argument. Exhibit 37. The court of appeals did not postpone or cancel oral arguments, but took up and considered the mootness argument at oral argument, then denied the Defendants request. Because the pending complaint remained against EMPOWER before the TEC, the court of appeals reasoned in argument that the Defendants could continue their pattern of issuing and, when challenged in court, withdrawing subpoenas, as they had done five times previously.

83. In six days after oral argument, on September 20, 2016, TEC staff moved to dismiss the complaints for insufficient credible evidence (Exhibit 38). The motion admits that the TEC never had sufficient evidence of violations. The only event in the case was the oral argument on Plaintiffs' appeal. Rather than allowing a court to actually rule on the relevance of the subpoenas and the merits of the actions of the Defendants, the Defendants admitted they had no credible evidence of any violation by Plaintiffs and hurriedly moved to dismiss the complaints. It was the only legal move they could take to avoid exposure and judicial criticism.

84. On October 13, 2016, 29 days after the appellate oral argument, the Defendants voted to dismiss the complaint against EMPOWER, thereby formally mooting the appeal. Plaintiffs at no time ever produced a single document in response to the five subpoenas served by

23

the Defendants. The dismissal by the TEC is attached hereto as Exhibit 39. The dismissal is another admission by the TEC that it never had factual or legal jurisdiction to consider the complaint and, therefore, no basis to issue their many subpoenas.

85.     Further, on September 7, one week before oral argument of the appeal, Defendants dismissed the Enforcement Suit without reason or explanation to the court (Exhibit 40).  The TEC admitted it did not need any of the subpoenaed documents.  Plaintiffs had filed a counterclaim to the enforcement suit pursuant to TEX. CIV. PRAC. & REM. CODE § 105, seeking the recovery of costs and attorneys' fees. The Defendants argued to the trial court in that case that because they were a legislative branch agency, and not an executive branch agency, they were not subject to that statute and did not owe the Plaintiffs' court costs or attorneys' fees.

86.     The actions of the Defendants, both in their individual and official capacities, violated clearly established constitutional rights of which a reasonable person would have known. In fact, counsel for Plaintiff informed the Defendants of the Plaintiffs' constitutional rights at almost every TEC meetings during the pendency of the complaints against Plaintiffs[16]. The Defendants knew of the clearly established and well-known federal and state law, as well as the constitutional rights of Plaintiffs, the Defendants were violating.  Rather than recognizing the Plaintiffs' rights, the Defendants intentionally, willfully and maliciously chose to ignore them. In fact, Chairman Untermeyer bragged in an editorial written in the Houston Chronicle on Sunday, July 8, 2016 when he wrote:

> "Some groups allege that disclosure is an infringement of the First Amendment's guarantee of free speech and the right to petition government for a "redness of grievances". They claim that donors could be subject to harassment if their names are made public, and they cite a 1958 decision of the U.S. Supreme Court that protected members of the Alabama NAACP from having their names revealed.

---

[16] The meetings of the TEC are audio (always) and video (mostly) recorded and are available on the state website.

24

But it is ludicrous to compare some of our state's richest and most influential political players with the truly endangered members of the Alabama NAACP in the era of segregation. They simply don't want us to know who they are and whom they are supporting.

One day a court of competent jurisdiction may sympathize with these bashful billionaires and throw out the disclosure laws enforced by the Texas Ethics Commission. Until that day, we shall fulfill our sworn duty to uphold those laws and pursue violators to the extent we are able."

A copy of the Untermeyer editorial is attached hereto as Exhibit 41.

87. The Defendant knew their actions against the Plaintiffs in prosecuting the complaints and issuing frivolous subpoenas were in violation of clearly established constitutional rights. The entire conspiratorial effort in drafting the complaints anonymously, having the complaints filed by Texas House Chairman under "information and belief", accepting jurisdiction of a complaint that did not allege a violation of law the TEC could enforce, issuing overly broad, absurd and harassing subpoenas on multiple occasions, requiring Plaintiffs to seek relief in a "court of competent jurisdiction", withdrawing each subpoena when it was judicially challenged , openly bragging about ignoring well-established constitutional rights so the Defendants could "focus on significant cases involving alleged sharks," (exhibit 41), then dismissing the complaints altogether when an appellate court was reviewing their unconstitutional behavior, were conspiratorial acts committed by the Defendants, the complaint filers, the complaint drafters and others for whose this work was done on their behalf, the purpose of which was to violate Plaintiffs constitutional rights and the rights of the Plaintiffs donors, all of which cause damages to the Plaintiffs.

## E. Causes of Action

### COUNT I
### Abuse of Process

88. Plaintiffs' reallege the proceedings paragraphs.

25

89. The Defendants never have had an authorized purpose to investigate the complaints or issue subpoenas because Defendants have not identified any statute or law that EMPOWER may have broken. In fact, the law was conclusively decided against the Defendants' claim in December 2014. Additionally, Sullivan was not before the TEC as either a Respondent or a Third Party Witness. Therefore, the subpoenas and/or Order are not relevant to an authorized, statutory purpose, and were only issued to harass EMPOWER and Sullivan and intimidate their supporters. Further, the subpoenas were general warrants of investigation, prohibited by both the Fourth and Fourteenth Amendments to the U.S. Constitution.

90. The TEC has never adopted rules as required by TEX. GOV'T CODE § 571.131(c) by which formal hearings are prosecuted. Plaintiffs have no procedural due process rights in this formal hearing stage. For example, Plaintiffs have no real ability to quash a subpoena in a hearing before the same body who voted to issue the subpoena. Without substantive rules, the formal hearing process is a sham. Accordingly, as there are not substantive procedural rules, the Defendants have not followed statutory procedures in seeking to enforce the subpoenas.

91. Further, the subpoenas and/or Order never described documents with adequate particularity, and were overbroad and excessive. Plus, the subpoenas always requested constitutionally protected information. To the extent the subpoenas requested information that EMPOWER was to have provided by way of required filings, the TEC already possessed those documents.

92. Requiring production pursuant to the subpoenas and/or Order is in violation of the Plaintiffs' rights guaranteed under the First, Fourth, and Fourteenth Amendments of the United States Constitution, and was designated to harass and intimidate Plaintiffs and cause them great legal expenses in their defense. Plaintiffs have suffered great expense, including attorneys' fees

26

in defending against the subpoenas, for which they sue Defendants, jointly and severally, to recover damages.

## COUNT II
### Frivolous Claim by State Agency

93. Plaintiffs reallege the preceding paragraphs.

94. If the TEC is a state agency, as that term is used in TEX. CIV. PRAC. & REM. CODE § 105.001(3), then its Defendants are liable to Plaintiffs under TEX. CIV. PRAC. & REM. CODE § 105.002. All effects of the TEC, including the Enforcement Suit, were frivolous, unreasonable or without foundation and the Defendants have admitted as such. The Plaintiffs have expended attorneys' fees, expenses, and costs associated in the defense of this effort by the Defendants to force production of documents where production was not legally warranted.

95. Accordingly, pursuant to Chapter 105 of the TEX. CIV. PRAC. & REM. CODE, Plaintiffs seek the recovery of their court costs, litigation expenses, and reasonable attorneys' fees. If successful on this claim, Plaintiffs intend to seek recovery, by separate motion if necessary, of their court costs, expenses, and reasonable attorneys' fees allowed by TEX. CIV. PRAC.& REM. CODE § 105.002.

## COUNT III
### Declaratory Judgment

96. In the alternative to Count II, Plaintiffs seek, that the Court, pursuant to Chapter 37 of TEX. CIV. PRAC. & REM. CODE, declare that the TEC is a Legislative Branch Agency and that, as a legislative agency, the TEC lacks constitutional authority to exercise the police powers given to the Executive Branch by the Texas State Constitution and the United States Constitution.

97. The Legislature may not confer executive branch powers on the TEC, a legislative branch agency because doing so would violate the separation of powers provision of the Texas

27

42422513;1

4273

Constitution, TEX CONST. art II and the United States Constitution, *Buckley v. Valeo*, 424 U.S. 132, 139-142 (1976). The Legislature cannot constitutionally confer executive branch duties upon a legislative office, *Springer v. Philippine Islands*, 277 US. 189, 202 (1928), because it does not have those powers to confer on itself.

98.    Accordingly, Sections 571.061, 571.172, 571.1243, 571.137(a) and 571.173 of the Texas Government Code violate the separation of powers doctrine and are unconstitutional and, therefore, are unenforceable by the TEC. Plaintiffs seek a judgment of this Court and pursuant to the Uniform Declaratory Judgment Act so declaring .

99.    Plaintiffs also seek a judgment of this Count under the Uniform Declaratory Judgment Act declaring that the TEC does not now have and has never had the constitutional authority to exercise the executive branch power of imposing or collecting any fine, penalty, or punitive fee.

100.    Plaintiffs also seek a judgment disgorging from the TEC all fines and fees that it has unconstitutionally collected from Plaintiffs.

101.    Plaintiffs seek the recovery of attorneys' fees.

## COUNT IV
## Further Declaratory Judgment

102.    Plaintiffs reallege the preceding paragraphs.

103.    Plaintiffs seek that this Court declare that Plaintiffs, or any respondent in an action by the TEC, may move this Court to issue a protective order and quash the TEC subpoenas as provided by the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 571.137(d) (West).

28

104. Plaintiffs ask this Court to declare that EMPOWER, specifically, and any legally formed corporate entity, in general, may not be deemed to be a political action committee by engaging in political speech by the TEC.

105. Plaintiffs ask this Court to declare that the rule adopted by the TEC in defining "principal purpose" is in violation of controlling case authority and is, therefore, void.

106. Plaintiffs ask this Court to declare that the TEC must decide each complaint before it "promptly" and must set the maximum length that a matter may pend before it before being automatically dismissed.

107. Plaintiffs ask this Court to declare that the term of "campaign expenditure" as used in the Election Code is unconstitutional as applied to EMPOWER because none of EMPOWER's expenditures were made "in connections with" a campaign.

108. Plaintiffs ask this Court Declare that the term "in connection with" as used in the Texas Election Code is facially unconstitutional because it is vague and/or overbroad in every context. Any contribution to a 501(c) (4) organization could, "upon information and belief, be alleged to be "in connection with" a campaign and subject the organization to massive filing requirements, complaints and a serious of subpoenas, court cases, attorney fees, expenses, and defense cost.

109. Plaintiffs ask this Court to declare that the term "campaign contribution" as used in the Texas Election Code is both facially and, as applied to EMPOWER, unconstitutional because none of the contributions to EMPOWER were made in connection with a campaign. The intent of the donor is never disclosed or known to the organization.

110. Again, a complaint filed "upon information and belief" subjects the organization to massive filing requirements, subpoenas, court cases and defense costs under the Texas

29

Election Code. Yet, it is not possible for a complaint filed "upon information and belief" alleging the complainant knows the donor's intent where the donor's intent is never disclosed in any filing or even known to the organization. Such a loose complaint standard would allow every organization to be challenged by a complaint filed in the TEC, alleging violations of the Election Code – and without evidence.

## COUNT V
### Due Process and/or Civil Rights Violation

111. Plaintiffs reallege the preceding paragraphs.

112. This claim is brought against the individual commission members who will be collectively referred to as "Commissioners." They are sued jointly and severally in their individual and representative capacities and as co-conspirators in the violation of the Plaintiffs due process and civil rights. They are also sued in their official capacity as agents of the state who acted ultra vires, that is, outside of their lawful authority. They were sued individually because the Commissioners initially answered and asserted they were immune from suit in their official capacities and because the Plaintiffs are seeking damages from the Commissioners prior acts.

113. Commissioners, in both their individual and official capacities, knew of the constitutional infinity to their authority to act under color of state law yet acted anyway in investigating these complaints. The investigation of the complaints violated clearly established constitutional rights which a reasonable person would have known and of which they knew. Initially, the complaints they sought to investigate did not allege a violation of any law that fell under their purview. Later, the Austin Court of Appeals clearly rejected the Defendants hopeful theory of liability. Yet, the Commissioners continued to pursue it, issuing unlawful subpoenas, and violating the Plaintiffs' constitutional rights of speech, assembly, and petition. Additionally,

30

the Commissioners knew that the TEC is a legislative agency and, as such, they lack constitutional authority to enforce a complaint against the Plaintiffs. The issuance of unlawful subpoenas was a violation of the Plaintiffs' constitutional rights of speech, assembly and petition and to be secure from unlawful searches and seizures.

114. It is uncontested that the Commissioners have failed and refused to enact formal procedural rules to protect respondents from complaints as directed by the Texas Legislature in September 1993, but instead, the Commissioners propounded, changed and defined (or re-defined) the TEC's rules during hearings, blatantly disregarded recognized standards of law and justice, to meet their own ends and purposes. TEX. GOV'T CODE § 571.131(c) ("The commission **shall** adopt rules governing discovery, hearings, and related procedures consistent with this chapter and Chapter 2001.") (Effective September 1, 1993).

115. The due course of law guarantee in the Texas Constitution provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. ART. I, § 19. The Texas due course clause is nearly identical to the federal due process clause, which provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; ....

U.S. Const. amend. XIV, § 1.

116. While the Texas Constitution is textually different in that it refers to "due course" rather than "due process," these terms are regarded as without meaningful distinction. *Mellinger v. City of Houston*, 68 Tex. 37, 3 S.W. 249, 252-53 (1887).

117. Due process under Texas law at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

31

118. For the Commissioners to conduct a hearing in a meaningful manner, according to the Texas Legislature, requires the establishment of procedural rules. *See* TEX. GOV'T CODE § 571.131(c) ("The commission **shall** adopt rules governing discovery, hearings, and related procedures consistent with this chapter and Chapter 2001.") (Effective September 1, 1993).

119. Accordingly, any hearing in front of the Commissioners without the adoption of procedural rules violated Plaintiffs' Due Process rights.

120. The Commissioners failed to identify a specific statute they have authority to administer that EMPOWER may have violated. In fact, the Commissioners have indisputably known since December 2014, the interpretation of the Election Code they seek to apply against EMPOWER has been directly disavowed by controlling case authority. The Commissioners attempted, in contravention to controlling authority, to deem any corporation that receives contributions and then uses those contributions for issue advocacy or "direct campaign expenditures" to be operating "in concert with another person" so as to trigger the requirement that such corporation register itself as a "general-purpose committee," with all the restrictions imposed on it by statute and file reports with the TEC. Even with the knowledge of the controlling case authority eviscerating its jurisdiction, the Commissioners failed to rule on the merits of the case until after oral argument in the Third Court of Appeals on the denial of the injunction in this case. Instead, they sought to harass the Plaintiffs with multiple subpoenas, hearings, and orders to obtain constitutionally privileged and protected documents, the result of which is to intentionally and knowingly cause an unnecessary expense of time, cost and attorneys' fees to EMPOWER. To the extent that documents were sought from Sullivan in his individual capacity, the same is true.

32

121. The effect of the Commissioners' prosecution against EMPOWER and/or Sullivan without identifying what specific statute either may have violated and in contravention to controlling authority, as it relates to the EMPOWER Complaints, are violations of the Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments of the United States Constitution. Plaintiffs were harassed and forced to expand time and resources in their defense, as well as attorneys' fees in protecting their rights. The attorneys' fees in defense before the TEC, in the Enforcement Suit, in the courts of appeals, and in federal court, are all sought to be recovered herein as damages. Accordingly, Plaintiffs seek relief and damages as is authorized pursuant to 42 U.S.C. 1983 and attorneys' fees, costs, and expenses pursuant to 42 U.S.C. 1988.

122. The Commissioners attempted, under color of state law, to enforce two new unconstitutional interpretations of its statutes and regulations. The interpretations were being selectively enforced without prior notice to the Plaintiffs or any other corporate entity in Texas.[17] The Commissioners attempted to deem any corporation which receives contributions, and then uses those contributions for "direct campaign expenditures,"[18] to be operating "in concert with another person" so as to trigger the requirement that such a corporation must register itself as a "general-purpose committee," with all the restrictions thereof, and file accordingly. This was a violation of the Plaintiffs' rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.

---

[17] The Commissioners are attempting to enforce, in the negative, Texas Election Code, Title 15, Chapter 254, Subchapter J § 254.261: "a person not acting in concert with another person who makes one or more direct campaign expenditures and election from the person's own property shall comply with this chapter as if the person were the campaign treasurer of a general-purpose committee that does not file monthly reports under § 254.155."

[18] The Texas Ethics Commission in its *Advisory Opinion 489* (2010) states that the phrase "independent expenditure" is interchangeable with the phrase "direct campaign expenditure" in Texas law for the purpose of determining the effects of *Citizens United v. FEC*, 558 US 310 (2010) upon Title 15 of the Texas Election Code. This oddity must be kept in mind since "direct campaign expenditure" has a different meaning in federal jurisprudence.

33

123. The Commissioners also attempted, under color of state law, to interpret legislative score-carding as lobbying. In their attempt to enforce these two new interpretations, the Commissioners sought to enforce two subpoenas against the Plaintiffs which, if complied with, would provide the Commissioners and political opponents of Plaintiffs with information that is constitutionally protected. This is a violation of the Plaintiffs' rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.

124. The Commissioners, through the issuance and service of subpoenas on Plaintiffs, for which Plaintiffs have no recourse, violated, under color of state law, the Plaintiffs' right of speech, petition, and association under the First Amendment of the United States Constitution.

125. As of February 4, 2014, there were thirty-five organizations, either nonprofit or for-profit corporations that file expenditure only reports with TEC in the same manner as EMPOWER.[19] However, the Commissioners, under color of state law, have engaged in a pattern of selective enforcement against EMPOWER as an act of political retribution.

126. Defendants may only consider matters submitted to them in sworn complaints or items voted on by a super majority of the TEC. Tex. Gov't Code § 571.121.

127. The Complaints at issue in this case were based on "information and belief," effectively hearsay evidence, and no affirmative vote to expand the complaints to include other matters was made by the Commissioners or the TEC.[20] However, the Commissioners attempted, under color of state law and in direct defiance of controlling case authority, to alter the campaign finance and lobbying enforcement scheme in Texas by requiring any entity that is a single person to form itself as a general purpose political committee, as opposed to an entity making independent expenditures, for the sole purpose of discovering the donors to EMPOWER.

---

[19] See http://www.ethics.state.tx.us/dfs/Direct Expns.htm (last visited February 25, 2014).

[20] TEC Pre-Hearing Conference, Feb. 12, 2014, pg. 91, line 9, through page 94, line 23. Exhibit 18.

34

42422513;1

4280

This is a violation of rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.

128.     In furtherance of their selective, arbitrary, and unconstitutional enforcement against EMPOWER, the Commissioners issued subpoenas for the production of documents that, if EMPOWER were forced to comply, would have expanded the scope of the complaints to included constitutionally protected speech, petition and association rights of Plaintiffs. Accordingly, the Commissioners attempted, under color of state law, to improperly and unconstitutionally enforce an unconstitutional complaint and subpoena process in violation of the Plaintiffs' rights and/or the First and Fourteenth Amendments of the United States Constitution, and also the separation of powers provision in the Texas Constitution.

129.     Additionally, the TEC and its Commissioners are required pursuant to TEX GOV'T CODE § 571.126(d) to promptly conduct a formal hearing on each complaint. The TEC's determination of insufficient credible evidence was made on November 5, 2013. Since then, EMPOWER made a request for a final decision on the complaints at every TEC hearing, without recourse from the TEC. Notably, the same subpoena was issued in the Sullivan complaints and the TEC chose to proceed to a final formal hearing and was able to issue a final order without obtaining any subpoenaed documents. Accordingly, it is not credible for the TEC or its Commissioners to have asserted that any of this subpoenaed information was necessary to their determination of the EMPOWER complaints. The dismissal of the EMPOWER complaints is an admission of this fact by Defendants. It is strong evidence of the Defendants' intent to harm EMPOWER, as the subpoenaed documents were not relevant to whether a violation occurred and that the subpoenas were withdrawn and the complaint dismissed without the production of any documents in response to the subpoenas. In short, the TEC and the Commissioners have used the

35

formal hearing process as a means to harm Plaintiffs due process and civil rights. Accordingly, Plaintiffs have suffered the loss of the rights under the First, Fourth, and Fourteenth amendments of the United States Constitution.

130.     Further, Plaintiffs have been required to hire counsel to defend themselves against these knowingly frivolous complaints before the TEC and their Commissioners at great expense, including attorneys' fees, and costs. As an element of damages, Plaintiffs seek the recovery of these fees and expenses as authorized under 42 USC 1983.

## F. Damages

131.     Plaintiffs have endured more than a four-year pattern of harassing behavior by the Defendants, the effect of that behavior was to inhibit and quash Plaintiffs' rights of speech, petition, and assembly.  Each and every time the Plaintiffs challenged the Defendants' subpoenas in court, the Defendants ran away and hid, never defending their subpoenas or actions and going so far as to moot an appeal rather than have a court rule on their actions.  Accordingly, Plaintiffs sue for all damages, including punitive damages, resulting from the loss and loss of use of those rights.

132.     Plaintiffs have been forced to defend themselves for several years from meritless attacks of their constitutional rights by the Defendants, for which Plaintiffs were required to hire counsel and to represent the Plaintiffs in the TEC, in several district courts, in the courts of appeals, and in a federal court.  Plaintiffs sue for the recovery of all their attorneys' fees, and costs incurred in defense of the complaints before the TEC in this jurisdiction as an element of damages under 42 USC 1983 and which are in excess of the jurisdictional limits of this Court.

133.     Plaintiffs sue Commissioners, jointly and severally, for punitive damages.

## G. Jury Demand

134.     Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

36

42422513;1

4282

## H. Conditions Precedent

135. All conditions precedent to Plaintiffs' claim for relief have been met, performed or have occurred.

## I. Request for Disclosure

136. Under Texas Rule of Civil Procedure 194, Plaintiffs request that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2. Despite their request having been made and pending for several years, the Defendants have never responded to the Request for Disclosure. The irony of the failure of the Defendants to respond to this request requires notation.

## J. Prayer

NOW THEREFORE, Plaintiffs respectfully pray that the Court issue citation for all of the Defendants to appear and answer, and that Plaintiffs be awarded a Judgment against Defendants that:

    a. Declares :

        i. that the TEC is a Legislative Branch Agency and, as such, lacks the authority under the Texas and United States Constitutions to exercise executive branch authority and that the TEC may not exercise executive branch enforcement powers under sections 571.061, 571.172, 571.243, 571.137(a), and 571.173 of the Government Code; and that the TEC must disgorge all fines and fees ever paid to it by Plaintiffs;

        ii. that Plaintiffs, or any respondent in an action by the TEC, may move this Court to issue a protective order and quash the TEC subpoenas as provided by the TEX. GOV'T CODE § 571.137(d);

        iii. that EMPOWER, specifically, and any legally formed corporate entity, in general, may not be turned into a political action committee by engaging in political speech;

37

iv.     that the rule adopted by the TEC in defining principal purpose is in violation of controlling case authority and is, therefore, void;

v.     that the alleged conduct of EMPOWER in the ethics complaints at issue is not a violation of the Texas Election Code;

vi.     that the TEC must decide each complaint before it "promptly" and must set the maximum length of time that a matter may pend before the TEC;

vii.     that the term "campaign expenditure" as used in the Texas Election Code is unconstitutional as applied to EMPOWER because none of EMPOWER's expenditures were made "in connections with" a campaign;

viii.     that the term "in connection with" as used in the Texas Election Code is facially unconstitutional because it is vague and/or overbroad in every instance; and

ix.     that the term "campaign contribution" as used in the Texas Election Code is both facially and as applied to EMPOWER unconstitutional because it is vague and ambiguous in every instance and as applied to EMPOWER;

b.     Holds that any hearing in front of the TEC without the adoption of procedural rules violates Plaintiff's Due Process rights;

c.     Awards monetary damages against the Commissioners, jointly and severally, pursuant to 42 USC 1983;

d.     Awards punitive damages against the Commissioners, jointly and severally, pursuant to 42 USC 1983;

e-     Grants their costs of this action, including reasonable attorneys' fees, pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009 and/or § 105.002 and/or 42 U.S.C. 1988, and any other applicable authority; and

f.     Grants Plaintiffs such other and further relief to which they may be justly entitled, at law or in equity.

42422513;1

4284

Respectfully submitted,

**AKERMAN L.L.P.**


By: */s/ James E. "Trey" Trainor, III*
      **James E. "Trey" Trainor, III**
      State Bar No. 24042052
      700 Lavaca Street Suite 1400
      Austin, Texas 78701
      Telephone: (512) 623-6700
      Facsimile: (512) 623-6701
      Email: trey.trainor@akerman.com

      **Joseph M. Nixon**
      State Bar No. 15244800
      1300 Post Oak Blvd., Suite 2500
      Houston, Texas 77056
      Telephone: (713) 871-6809
      Facsimile: (713) 960-1527
      Email: joe.nixon@akerman.com

**ATTORNEYS FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2017, a true and correct copy of this pleading was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.


      */s/ James E. "Trey" Trainor, III*
      James E. "Trey" Trainor, III

42422513;1

**Appx. 3**

7/28/2017 10:27 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-14-001252
Irene Silva

CAUSE NO. D-1-GN-14-001252

| | | |
|---|---|---|
| EMPOWER TEXANS, INC., and MICHAEL QUINN SULLIVAN, | § § § § § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § § | |
| v. | § § § § | |
| STATE OF TEXAS ETHICS COMMISSION, SEANAA WILLING, in hers capacity as Executive Director of the Texas Ethics Commission, TOM RAMSAY, individually and in his capacity as Commissioner, PAUL HOBBY, individually and in his capacity as Commissioner, HUGH C. AKIN, individually and in his capacity as Commissioner, JAMES T. CLANCY, individually and in his capacity as Commissioner, WILHELMINA R. DELCO, individually and in her capacity as Commissioner, WARREN T. HARRISON, individually and in his capacity as Commissioner, ROBERT K. LONG, individually and in his capacity as Commissioner, and CHARLES G. UNTERMEYER, individually and in his capacity as Commissioner, | § § § § § § § § § § § § § § § § § § § § § § | TRAVIS COUNTY, TEXAS |
| *Defendants.* | § § | 53RD JUDICIAL DISTRICT |

## PLAINTIFFS' RESPONSE TO THE INDIVIDUAL DEFENDANTS' PLEA TO THE JURISDICTION

TO THE HONORABLE STATE DISTRICT COURT JUDGE:

COME NOW Plaintiffs Empower Texans, Inc. ("**EMPOWER**") and Michael Quinn Sullivan ("**Sullivan**"), respond to the Defendants sued in their individual capacity as follows:

This is a civil rights case. Plaintiffs have sued Defendants Ramsay, Hobby, Akin, Clancy, Delco, Harrison, Long, and Untermeyer in their individual capacities for actions taken under color of state law which deprived Plaintiffs of rights, privileges, and immunities secured by the U.S. Constitution as set out in Counts I and V of the Plaintiffs' Fourth Amended Complaint.

42447250;1

4291

This Court has jurisdiction to hear cases brought under *42 U.S.C. 1983* pursuant to the Supremacy Clause of Article VI of the U.S. Constitution. *See Feder v. Casey,* 487.US. 131 (1988).

To prevail in a claim under *42 U.S.C. 1983,* the Plaintiffs must prove that the individual Defendants subjected Plaintiffs to conduct that occurred under a color of state law and that the Defendants' conduct deprived the Plaintiffs of rights, privileges, or immunities guaranteed under the U.S. Constitution or other federal law.

Plaintiffs, in Counts I and V of their Fourth Amended Complaint, have plainly made those allegations and, together with the facts set out in the complaint, have properly pleaded a case under *42 U.S.C. 1983* against the Defendants in their individual capacities. *See Will v. Michigan Department of State Police* 491 U.S. 58 (1989) (If a defendant is a state official, the defendant must be named in their personal capacity and not their professional capacity).

A plea to the jurisdiction challenges a trial court's subject matter jurisdiction to decide a case or a specific cause of action. *See Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999); *Sweeney v. Jefferson,* 212 S.W.3d 556, 562 (Tex. App.-Austin 2006, no pet.). To prevail on a plea to the jurisdiction, the party challenging jurisdiction must show that even if all the allegations in the other party's petition are taken as true, there is an incurable jurisdictional defect on the face of the pleadings that deprives the trial court of subject matter jurisdictional. A plea to the jurisdiction is not a determination of the merits. *Sweeney,* 212 S.W.3d at 562. If the pleadings do not affirmatively demonstrate a lack of jurisdiction, the plea to the jurisdiction must be denied. *See Peek v. Equipment Serv. Co.,* 779 S.W. 2d 802, 804 (Tex. 1989).

Here, the TEC's Plea to the Jurisdiction was directed at Empower Texans' and Sullivan's pleading. As a result, Empower Texans' and Sullivan's pleadings must be construed liberally in

favor of jurisdiction. *See Canario's Inc. v. City of Austin,* 2015 WL 5096650 at *2 n.3 (Tex. App.-Austin 2015, no pet.). Additionally, the Court must look to Empower Texans' and Sullivans' intent and accept their good faith jurisdictional allegations as true. *See Texas Dep't of Parks and Wildlife,* 133 S.W.3d at 226.

The Plea made by the individual Defendants is a hybrid motion for summary judgment that attacks the merits of Plaintiff's claims. This is improper as a matter of law. As a result, they assert a completely incorrect legal standard for the Court to apply when considering jurisdiction.

The simple question for this Court is this: Are there sufficient allegations pled which, if true and construing the Plaintiffs' pleadings in favor of jurisdiction, would give rise to a cause of action under *42 U.S.C. 1983*? If so, the individual Defendants' plea to the jurisdiction must fail—and it does fail.

Plaintiffs have indisputably pled (and proven with their exhibits) a pattern by the individual Defendants of an abuse of process, an abuse of office, and an abuse of state law, designed to deprive Plaintiffs of their rights secured by the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. Plaintiffs have suffered a resulting loss of those rights and property. The individual Defendants were, at the time of their actions, commissioners of the Texas Ethics Commission, an agency of the State of Texas, and they exercised wrongful conduct as commissioners. So, Plaintiffs have sufficiently pled that the individual Defendants, under color of state law, committed conduct that deprived Plaintiffs of rights, privileges, and immunities guaranteed under the U.S. Constitution. The Defendants' Plea to the Jurisdiction fails as a matter of law.

The individual Defendants further make a legally incorrect argument regarding damages. A civil rights plaintiff may recover nominal damages (as compensatory damages) and punitive

damages. *See Carey v. Piphus*, 435 U.S. 247 (1978); *Memphis Community School District v. Stachurn*, 477 U.S. 299 (1986); *Goss v. Lopez*, 419 U.S. 565 (1977). Nominal damages may be recovered solely for showing a lack of due process, even if the result would have been the same as if due process was provided. *Carey*, 435 U.S. at 247; *Goss*, 419 U.S. at 565.

The United States Supreme Court in *Carey* held as follows:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of the a claimants' substantive assertions, and because of the importance to organized society that procedural due process be observed, *See Boddie v. Connecticut,* 401 U.S. 371,401 U.S. 37 (1971); *Anti-Fascist Committee v. McGrath*, 341 U.S. at 171-172 (Frankfurter, J. concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Id.* at 435 U.S., 247, 266.

Compensatory damages may also include expenses incurred as the result of the violation. *Carey,* supra; *Memphis*, supra; *Akouri v. Florida Dept. of Transportation*, 408 F. 3rd 1338 (11th Cir. 2005).

Further, punitive damages may be awarded against state officials in their individual capacities. *See Smith V. Wade*, 461 U.S. 30 (1983). The Plaintiff need only prove that the official's conduct is malicious, intentional, or recklessly or callously indifferent to protected rights. *See Newport v. Fact Concerts*, 453 U.S. 269 (1981).

Here, Plaintiffs have plead for compensatory and punitive damages, which resulted from the deprivation of the constitutional rights, as required by the Texas Rules of Civil Procedures. This Court has jurisdiction of this case as a matter of law.

42447250;1

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs pray that the Individual Defendants Plea to the Jurisdiction be denied in all things. Plaintiffs additionally pray for such other and further relief to which they may be entitled, at law and at equity.

Respectfully submitted,

**AKERMAN L.L.P.**

By: _/s/ James E. "Trey" Trainor, III_
     **James E. "Trey" Trainor, III**
     State Bar No. 24042052
     700 Lavaca Street Suite 1400
     Austin, Texas 78701
     Telephone: (512) 623-6700
     Facsimile: (512) 623-6701
     Email: trey.trainor@akerman.com

     **Joseph M. Nixon**
     State Bar No. 15244800
     1300 Post Oak Blvd., Suite 2500
     Houston, Texas 77056
     Telephone: (713) 871-6809
     Facsimile: (713) 960-1527
     Email: joe.nixon@akerman.com

     **ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2017, a true and correct copy of this pleading was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

     _/s/ James E. "Trey" Trainor, III_
     James E. "Trey" Trainor, III

**Appx. 4**



Filed In The District Court
of Travis County, Texas

SEP 1 5 2017

At_____11:09 A.M.
Velva L. Price, District Clerk

**AMY CLARK MEACHUM**
Judge
(512) 854-9305

**HUETTE MERRELL**
Staff Attorney
(512) 854-9895

**VICKY MESCHER**
Court Operations Officer
(512) 854-9319

**201ST DISTRICT COURT**
HEMAN MARION SWEATT
TRAVIS COUNTY COURTHOUSE
P. O. BOX 1748
AUSTIN, TEXAS 78767
FAX (512) 854-2268

**ALICIA RACANELLI**
Official Reporter
(512) 854-4028

**ARMANDA MARTINEZ**
Court Clerk
(512) 854-5857

September 15, 2017

Amy K. Penn
Amanda G. Taylor
Beck Redden, LLP
515 Congress Avenue, Suite 1900
Austin, Texas 78701
*VIA email: apenn@beckredden.com*
*ataylor@beckredden.com*

Joseph M. Nixon
Akerman, L.L.P.
1300 Post Oak Blvd., Suite 2300
Houston, Texas
*VIA email: joe.nixon@akerman.com*

James E. "Trey" Trainor, III
700 Lavaca Street, Suite 1400
Austin, Texas 78701
*VIA email: trey.trainor@akerman.com*

Re: Cause No. D-1-GN-14-001252; *Empower Texans, Inc. and Michael Quinn Sullivan vs. State of Texas Ethics Commission, et al; in the 53rd Judicial District Court, Travis County, Texas*

Dear Counsel,

After careful consideration of Individual Defendants' Plea to the Jurisdiction, the response, the reply, the evidence, the pleadings and arguments of counsel, this Court grants Individual Defendants' Plea to the Jurisdiction.

Ms. Penn, please prepare the order, circulate it to opposing counsel for approval as to form, and submit it to this Court for signature. Thank you.

Sincerely,

Amy Clark Meachum
Judge, 201st District Court
Travis County, Texas

Original: Velva L. Price, District Clerk

Case # D-1-GN-14-001252



5416460

CAUSE NO. D-1-GN-14-001252

| | | |
|---|---|---|
| EMPOWER TEXANS, INC. and MICHAEL QUINN SULLIVAN | § § § § § § § § | IN THE DISTRICT COURT |
| *Plaintiffs,* | § § § § | |
| v. | § § § § § | |
| STATE OF TEXAS ETHICS COMMISSION, NATALIA LUNA ASHLEY, in her capacity as Executive Director of the Texas Ethics Commission, TOM RAMSAY, individually and in his capacity as Commissioner, PAUL HOBBY individually and in his capacity as Commissioner, HUGH C. AKIN, individually and in his capacity as Commissioner, JAMES T. CLANCY, individually and in his capacity as Commissioner, WILHELMINA R. DELCO, individually and in her capacity as Commissioner, WARREN T. HARRISON, individually and in his capacity as Commissioner, ROBERT K. LONG, individually and in his capacity as Commissioner, and CHARLES G. UNTERMEYER, individually and in his capacity as Commissioner, | § § § § § § § § § § § § § § § § § § | OF TRAVIS COUNTY, TEXAS |
| *Defendants.* | § § | 53rd JUDICIAL DISTRICT |

Filed in The District Court
of Travis County, Texas

OCT 20 2017 UUR

At 10:32 a M.

Velva L. Price, District Clerk

## ORDER

On August 15, 2017, came to be heard before this Court the Individual Defendants' Plea to the Jurisdiction. Upon careful consideration of the Plea, the response, the reply, the evidence, the pleadings and arguments of counsel, the Court determines that the Plea should be GRANTED in its entirety.

It is therefore ORDERED that the Individual Defendants' Plea to the Jurisdiction is GRANTED, and all claims brought pursuant to 42 U.S.C. § 1983 contained within Count V of Plaintiffs' Fourth Amended Petition are DISMISSED in their entirety with prejudice as to refiling.

1

SIGNED on this 20th day of October, 2017.

_____
The Honorable Amy Clark Meachum,
Judge Presiding


AGREED AS TO FORM:


AKERMAN, L.L.P.

By: _____
    Joseph M. Nixon
    joe.nixon@akerman.com
    1300 Post Oak Blvd., Suite 2300
    Houston, Texas
    Telephone: 713.623.0887
    Facsimile: 713.960.1527
    James E. "Trey" Trainor, III
    trey.trainor@akerman.com
    700 Lavaca Street, Suite 1400
    Austin, Texas 78701
    Telephone: 512.623.6700
    Facsimile: 512.623.6701

*Attorneys for Plaintiffs*

BECK REDDEN, LLP

By: */s/ Amy Penn*
    Eric J.R. Nichols
    State Bar No. 14994900
    enichols@beckredden.com
    Amanda G. Taylor
    State Bar No. 24045921
    ataylor@beckredden.com
    Amy K. Penn
    State Bar No. 24056117
    apenn@beckredden.com
    515 Congress Avenue, Suite 1900
    Austin, Texas 78701
    (512) 708-1000
    (512) 708-1002 FAX

*Attorneys for Defendants*

2

4326

CAUSE NO. D-1-GN-14-001252

**11/9/2017 12:32 PM**
**Velva L. Price**
**District Clerk**
**Travis County**
**D-1-GN-14-001252**
**Victoria Chambers**

| | | |
|---|---|---|
| **EMPOWER TEXANS, INC.**, and | § | **IN THE DISTRICT COURT OF** |
| **MICHAEL QUINN SULLIVAN**, | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **STATE OF TEXAS ETHICS COMMISSION,** | § | |
| **SEANAA WILLING**, in hers capacity as Executive | § | |
| Director of the Texas Ethics Commission, **TOM** | § | |
| **RAMSAY**, individually and in his capacity as | § | |
| Commissioner, **PAUL HOBBY**, individually and in | § | |
| his capacity as Commissioner, **HUGH C. AKIN**, | § | |
| individually and in his capacity as Commissioner, | § | **TRAVIS COUNTY, TEXAS** |
| **JAMES T. CLANCY**, individually and in his | § | |
| capacity as Commissioner, **WILHELMINA R.** | § | |
| **DELCO**, individually and in her capacity as | § | |
| Commissioner, **WARREN T. HARRISON**, | § | |
| individually and in his capacity as Commissioner, | § | |
| **ROBERT K. LONG**, individually and in his | § | |
| capacity as Commissioner, and **CHARLES G.** | § | |
| **UNTERMEYER**, individually and in his capacity | § | |
| as Commissioner, | § | |
| *Defendants.* | § | **53RD JUDICIAL DISTRICT** |

## NOTICE OF APPEAL

Plaintiffs Empower Texans, Inc. and Michael Quinn Sullivan files this Notice of Appeal pursuant to section 51.014 (a) (8) of the Texas Civil Practice and Remedies Code and Rules 25.1 and 26.1(b) of the Texas Rules of Appellate Procedure, and would respectfully show the Court as follows:

1.    Plaintiffs desire to appeal this Court's Order, signed October 20, 2017, a copy of which is attached hereto.

2.    Plaintiffs appeal is to the Third Court of Appeals in Austin, Texas.

3.    A copy of this Notice of Appeal has been served on all parties to the proceeding from which this appeal is taken. *See* TEX. R. APP. P. 25.1(e), 28.1(b).

4327

4. This interlocutory appeal is an accelerated appeal under Rule 28.1 of the Texas Rules of Appellate Procedure and is not a parental termination or child protection case. Tex. R. App 28.1 and 25.1 (d) (6).

5. This interlocutory appeal results in an automatic stay of all proceedings in the trial court during the pendency of this appeal Tex. Civ. Proc. & Rem. Code § 51.014 (b) and (c).

Respectfully submitted,

**AKERMAN L.L.P.**

By: */s/ Joseph M. Nixon*
  **Joseph M. Nixon**
  State Bar No. 15244800
  1300 Post Oak Blvd., Suite 2500
  Houston, Texas 77056
  Telephone: (713) 871-6809
  Facsimile: (713) 960-1527
  Email: joe.nixon@akerman.com

  **James E. "Trey" Trainor, III**
  State Bar No. 24042052
  700 Lavaca Street Suite 1400
  Austin, Texas 78701
  Telephone: (512) 623-6700
  Facsimile: (512) 623-6701
  Email: trey.trainor@akerman.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2017, a true and correct copy of this pleading was served on all counsel of record in accordance with the Texas Rules of Civil Procedure.

  */s/ Joseph M. Nixon*
  Joseph M. Nixon

4328

# Appx. 7

ACCEPTED
03-17-00770-CV
20934840
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/28/2017 11:52 AM
JEFFREY D. KYLE
CLERK

| | |
|---|---|
| Appellate Docket Number: | 03-17-00770-CV |
| Appellate Case Style: | Empower Texans, Inc. and Michael Quinn Sullivan |
| Vs. | State of Texas Ethics Commission, et al |
| Companion Case No(s) : | |

Amended/corrected statement:

## DOCKETING STATEMENT (Civil)

Appellate Court: 3rd Court of Appeals

(to be filed in the court of appeals upon perfection of appeal under TRAP 32)

### I. Appellant

☐ Person   ☒ Organization   (choose one)

Organization:   Empower Texans, Inc. and Michael Quinn Sullivan

First Name:

Middle  Name:

Last  Name:

Suffix:

Pro Se:  ◯

### II. Appellant  Attorney(s)

☒   Lead Attorney

First Name:   Joseph

Middle  Name:   M.

Last  Name:   Nixon

Suffix:

Law Firm Name:  Akerman LLP

Address 1:   1300 Post Oak Blvd

Address 2:   Suite 2500

City:   Houston

State:   Texas      Zip+4:   77056

Telephone:   713-623-0887      ext.

Fax:   713-960-1527

Email:   joe.nixon@akerman.com

SBN:   15244800

[Add Appellant / Attorney]

### III. Appellee

☐ Person   ☒ Organization (choose one)

First Name:   State of Texas Ethics Commission, et al

Middle  Name:

Last  Name:

Suffix:

Pro Se:  ◯

### IV. Appellee Attorney(s)

☒   Lead Attorney

First Name:   Eric

Middle  Name:   J.R.

Last  Name:   Nichols

Suffix:

Law Firm Name:  Beck Redden, LLP

Address 1:   515 Congress Avenue

Address 2:   Suite 1900

City:   Austin

State:   Texas      Zip+4:   78701

Telephone:   512-900-3205      ext.

Fax:   512-708-1002

Email:   enichols@beckredden.com

SBN:   14994900

[Add Appellee / Attorney]

## V. Perfection Of Appeal And Jurisdiction

Nature of Case (Subject matter or type of case):   Other

Date order or judgment signed:   10/20/2017          Type of judgment:    Interlocutory Order

Date notice of appeal filed in trial court:   11/09/2017

If mailed to the trial court clerk, also give the date mailed:

Interlocutory appeal of appealable order:  ☒ Yes  ☐ No

If yes, please specify statutory or other basis on which interlocutory order is appealable (See TRAP 28): 51.014(a)(8) TCP&RC

Accelerated appeal (See TRAP 28):  ☐ Yes  ☒ No

If yes, please specify statutory or other basis on which appeal is accelerated:

Parental Termination or Child Protection? (See TRAP 28.4):   ☐ Yes  ☒ No

Permissive? (See TRAP 28.3):   ☐ Yes  ☒ No

If yes, please specify statutory or other basis for such status:

Agreed?  (See TRAP 28.2):   ☐ Yes  ☒ No

If yes, please specify statutory or other basis for such status:

Appeal should receive precedence, preference, or priority under statute or rule:   ☐ Yes  ☒ No

If yes, please specify statutory or other basis for such status:

Does this case involve an amount under $100,000?   ☐ Yes  ☒ No

Judgment or order disposes of all parties and issues:   ☐ Yes  ☒ No

Appeal from final judgment:   ☐ Yes  ☒ No

Does the appeal involve the constitutionality or the validity of a statute, rule, or ordinance?   ☒ Yes  ☐ No

## VI. Actions Extending Time To Perfect Appeal

| | | If yes, date filed: |
|---|---|---|
| Motion for New Trial: | ☐ Yes  ☒ No | If yes, date filed: |
| Motion to Modify Judgment: | ☐ Yes  ☒ No | If yes, date filed: |
| Request for Findings of Fact and Conclusions of Law: | ☐ Yes  ☒ No | If yes, date filed: |
| Motion to Reinstate: | ☐ Yes  ☒ No | If yes, date filed: |
| Motion under TRCP 306a: | ☐ Yes  ☒ No | If yes, date filed: |
| Other: | ☐ Yes  ☒ No | |

If other, please specify:

## VII. Indigency Of Party: (Attach file-stamped copy of Statement, and copy of the trial court order.)

| | | |
|---|---|---|
| Was Statement of Inability to Pay Court Costs filed in the trial court? | ☐ Yes  ☒ No | If yes, date filed: |
| Was a Motion Challenging the Statement filed in the trial court? | ☐ Yes  ☒ No | If yes, date filed: |
| Was there any hearing on appellant's ability to afford court costs? | ☐ Yes  ☒ No | Hearing date: |
| Did trial court sign an order under Texas Rule of Civil Procedure 145? | ☐ Yes  ☒ No | Date of order: |

If yes, trial court finding:   ☐ Challenge Sustained   ☐ Overruled

## VIII. Bankruptcy

Has any party to the court's judgment filed for protection in bankruptcy which might affect this appeal?  ☐ Yes  ☒ No

If yes, please attach a copy of the petition.

Date bankruptcy filed:                    Bankruptcy Case Number:

## IX. Trial Court And Record

Court:      53rd

County:   Travis County

**Trial Court Docket Number (Cause No.):**   D-1-GN-14-001252

Trial Judge (who tried or disposed of case):

First Name:      Amy

Middle Name:

Last Name:      Clark - Meachum

Suffix:

Address 1:        1000 Guadalupe 3rd Floor

Address 2 :

City:                Austin

State:     Texas                    Zip + 4:   78701

Telephone:    512-854-9305              ext.

Fax:        512-854-2268

Email:

Clerk's Record:

Trial Court Clerk:    ☒ District   ☐ County

Was clerk's record requested?    ☒ Yes   ☐ No

If yes, date requested:    11/21/2017

If no, date it will be requested:

Were payment arrangements made with clerk?

☒ Yes  ☐ No  ☐ Indigent

**(Note: No request required under TRAP 34.5(a),(b))**

Reporter's or Recorder's Record:

Is there a reporter's record?    ☒ Yes  ☐ No

Was reporter's record requested?    ☒ Yes  ☐ No

Was there a reporter's record electronically recorded?  ☒ Yes  ☐ No

If yes, date requested:    11/21/2017

If no, date it will be requested:

Were payment arrangements made with the court reporter/court recorder?  ☒ Yes  ☐ No  ☐ Indigent

☒ Court Reporter ☐ Court Recorder
☐ Official ☐ Substitute

First Name: Alicia

Middle Name:

Last Name: Racanelli

Suffix:

Address 1: 1000 Guadalupe 3rd Floor

Address 2:

City: Austin

State: Texas                Zip + 4: 78701

Telephone: 512-854-4028            ext.

Fax: 512-854-2268

Email:                                          [Add Reporter]

## X. Supersedeas Bond

Supersedeas bond filed: ☐ Yes ☒ No      If yes, date filed:

Will file: ☐ Yes ☒ No

## XI. Extraordinary Relief

Will you request extraordinary relief (e.g. temporary or ancillary relief) from this Court?      ☐ Yes ☒ No

If yes, briefly state the basis for your request:

## XII. Alternative Dispute Resolution/Mediation (Complete section if filing in the 1st, 2nd, 4th, 5th, 6th, 8th, 10th, 11th, 13th, or 14th Court of Appeal)

Should this appeal be referred to mediation?      ☐ Yes ☒ No

If no, please specify: There is no issue to mediate

Has the case been through an ADR procedure?      ☐ Yes ☒ No

If yes, who was the mediator?

What type of ADR procedure?

At what stage did the case go through ADR?   ☐ Pre-Trial   ☐ Post-Trial   ☐ Other

If other, please specify:

Type of case?
Give a brief description of the issue to be raised on appeal, the relief sought, and the applicable standard for review, if known (without prejudice to the right to raise additional issues or request additional relief):

This is a 42 USC 1983 case brought for civil rights violations brought against the TEC commissioners in both their individual and offical capacities. The court incorrectly granted a plea to the jurisd

How was the case disposed of?   Other

Summary of relief granted, including amount of money judgment, and if any, damages awarded.  plea TO THE JURISDICTION

If money judgment, what was the amount?  Actual damages:

Punitive (or similar) damages:

| | |
|---|---|
| Attorney's fees (trial): | |
| Attorney's fees (appellate): | |
| Other: | |
| If other, please specify: | |

Will you challenge this Court's jurisdiction?  ☐ Yes  ☒ No

Does judgment have language that one or more parties "take nothing"?  ☐ Yes  ☒ No

Does judgment have a Mother Hubbard clause?  ☐ Yes  ☒ No

Other basis for finality?   ORDER SIGNED WITH PREJUDICE

Rate the complexity of the case (use 1 for least and 5 for most complex):  ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☒ 5

Please make my answer to the preceding questions known to other parties in this case.  ☒ Yes  ☐ No

Can the parties agree on an appellate mediator?  ☐ Yes  ☒ No

If yes, please give name, address, telephone, fax and email address:

| Name | Address | Telephone | Fax | Email |
|---|---|---|---|---|
| | | | | |

Languages other than English in which the mediator should be proficient:

Name of person filing out mediation section of docketing statement:

## XIII.  Related Matters

List any pending or past related appeals before this or any other Texas appellate court by court, docket number, and style.

Docket Number:  03-17-00392-cv          Trial Court:  d-1-gn-17-001878

Style:     Michael Quinn Sullivan

Vs.   Texas Ethics Commission

[ Add Related Matter ]

| XIV. Pro Bono Program: (Complete section if filing in the 1st, 2nd, 3rd, 5th, 7th, 13th or 14th Courts of Appeals) |
| --- |

The Courts of Appeals listed above, in conjunction with the State Bar of Texas Appellate Section Pro Bono Committee and local Bar Associations, are conducting a program to place a limited number of civil appeals with appellate counsel who will represent the appellant in the appeal before this Court.

The Pro Bono Committee is solely responsible for screening and selecting the civil cases for inclusion in the Program based upon a number of discretionary criteria, including the financial means of the appellant or appellee. If a case is selected by the Committee, and can be matched with appellate counsel, that counsel will take over representation of the appellant or appellee without charging legal fees. More information regarding this program can be found in the Pro Bono Program Pamphlet available in paper form at the Clerk's Office or on the Internet at www.tex-app.org. If your case is selected and matched with a volunteer lawyer, you will receive a letter from the Pro Bono Committee within thirty (30) to forty-five (45) days after submitting this Docketing Statement.

Note: there is no guarantee that if you submit your case for possible inclusion in the Pro Bono Program, the Pro Bono Committee will select your case and that pro bono counsel can be found to represent you. Accordingly, you should not forego seeking other counsel to represent you in this proceeding. By signing your name below, you are authorizing the Pro Bono committee to transmit publicly available facts and information about your case, including parties and background, through selected Internet sites and Listserv to its pool of volunteer appellate attorneys.

Do you want this case to be considered for inclusion in the Pro Bono Program? ☐ Yes ☒ No

Do you authorize the Pro Bono Committee to contact your trial counsel of record in this matter to answer questions the committee may have regarding the appeal? ☐ Yes ☒ No

Please note that any such conversations would be maintained as confidential by the Pro Bono Committee and the information used solely for the purposes of considering the case for inclusion in the Pro Bono Program.

If you have not previously filed an Statement of Inability to Pay Court Costs and attached a file-stamped copy of that Statement, does your income exceed 200% of the U.S. Department of Health and Human Services Federal Poverty Guidelines? ☐ Yes ☒ No

These guidelines can be found in the Pro Bono Program Pamphlet as well as on the internet at http://aspe.hhs.gov/poverty/06poverty.shtml.

Are you willing to disclose your financial circumstances to the Pro Bono Committee? ☐ Yes ☒ No

If yes, please attach an Statement of Inability to Pay Court Costs completed and executed by the appellant or appellee. Sample forms may be found in the Clerk's Office or on the internet at http://www.tex-app.org. Your participation in the Pro Bono Program may be conditioned upon your execution of a Statement under oath as to your financial circumstances.

Give a brief description of the issues to be raised on appeal, the relief sought, and the applicable standard of review, if known (without prejudice to the right to raise additional issues or request additional relief; use a separate attachment, if necessary).

| XV. Signature |
| --- |

_____
Signature of counsel (or pro se party)

Date: 11/21/2017

Printed Name: Joseph M. Nixon

State Bar No.: 15244800

Electronic Signature: Joseph M. Nixon
   (Optional)

## XVI. Certificate of Service

The undersigned counsel certifies that this docketing statement has been served on the following lead counsel for all parties to the trial court's order or judgment as follows on                         .

_____

Signature of counsel (or pro se party)

Electronic Signature:  Joseph M. Nixon
(Optional)

State Bar No.:    15244800

Person Served

Certificate of Service Requirements (TRAP 9.5(e)): A certificate of service must be signed by the person who made the service and must state:

   (1) the date and manner of service;
   (2) the name and address of each person served, and
   (3) if the person served is a party's attorney, the name of the party represented by that attorney

Please enter the following for each person served:

Date Served:    11/22/2017

Manner Served:  eServed

First Name:    Eric

Middle Name:   J.R.

Last Name:    Nichols

Suffix:

Law Firm Name: Beck Redden, LLP

Address 1:    515 Congress Avenue, Suite 1900

Address 2:

City:      Austin

State    Texas          Zip+4:   78701

Telephone:          ext.

Fax:

Email:

If Attorney, Representing Party's Name:  State of